13 Cal.Rptr.3d 198 (2004)
118 Cal.App.4th 684
In re ISAYAH C., a Person Coming Under the Juvenile Court Law.
Marin County Department of Health and Human Services, Plaintiff and Respondent,
v.
Charles C., Defendant and Appellant.
No. A103022.
Court of Appeal, First District, Division Two.
May 12, 2004.
*200 Janet H. Saalfield, Sausalito, for Appellant.
Patrick Faulkner, County Counsel, Michele L. Keno, Deputy County Counsel, for Respondent.
*199 RUVOLO, J.
In this juvenile dependency case, the trial court was faced with a complex family situation involving three children of the same mother, each with a different father. The case was made even more difficult by an unfortunate sequence of events in which the two younger children were removed from the mother, one of whom was placed in his father's custody, after which the father was arrested for a parole violation. At the dispositional hearing, the trial court *201 denied the father's request that he be allowed to retain custody of his son and send him to be cared for by his paternal relatives, at least during his incarceration. Instead, the trial court ordered that both of the younger children be placed with their mother's sister.
On this ensuing appeal, the father argues that the trial court's order was not supported by findings, based on clear and convincing evidence, sufficient to justify removing the child from the father's custody under the applicable statutes. We agree, and accordingly reverse and remand for further proceedings.

I. FACTS AND PROCEDURAL BACKGROUND
Isayah C. is the third child of Tonya K., who is not a party to this appeal. Appellant Charles C. is Isayah's father, but is not the father of either of Tonya's two older children, Ashley J. and Matthew R. At the time of the proceedings in the trial court, Isayah was about two and one-half years old, Matthew was just over seven, and Ashley was nearly eighteen.[1]
Tonya has a history of alcohol and substance abuse, and Isayah tested positive for drugs when he was born. Sonoma County Children's Services provided court-ordered services to the family starting shortly after Isayah was born in August 2000. All three children were declared dependents in Sonoma County in February 2001. At the time of the Marin County dependency proceedings from which this appeal was taken, Ashley was in long-term foster care due to Tonya's failure to reunify with her, but Matthew and Isayah were living with Tonya in Marin County. Appellant had successfully completed his reunification plan in the Sonoma County dependency proceeding, and had been awarded joint custody of Isayah, though he and Tonya did not live together.
On February 28, 2003,[2] a social worker assigned to supervise a visit between Ashley and her brothers found Tonya intoxicated while caring for Isayah and Matthew, and the two boys were removed from Tonya's custody. Isayah was placed with his father on March 3, and Matthew was placed in a foster home.
On March 4, respondent Marin County Department of Health and Human Services (the Department) filed a juvenile dependency petition alleging that Matthew and Isayah came within the provisions of Welfare and Institutions Code section 300, subdivisions (b) and (j).[3] The petition alleged that Tonya had a substance abuse problem, and that she had neglected and physically abused Ashley in the past, but it contained no allegations regarding appellant. The Department's detention report, dated March 5, recognized that appellant had provided documentation establishing his paternity of Isayah, but expressed concern that appellant "may also have a substance abuse problem and an unstable lifestyle," and requested a substance abuse assessment of appellant to determine whether services should be provided to him.
At the detention hearing on March 5, appellant's counsel appeared on his behalf, but appellant himself was not present, because (as Tonya explained to the court) he had taken Isayah to the emergency room that morning. The court found that there was substantial danger to the children and detained Isayah in appellant's care, with *202 Matthew remaining in a foster home. A jurisdictional hearing was set for March 25.
The jurisdictional report originally prepared for the March 25 hearing reported that appellant had voluntarily brought Isayah to see a social worker at the Department on March 17. The social worker inspected appellant's trailer home[4] and reported that appellant was cooperative and that Isayah "looked clean and was well cared for." Appellant told the social worker that he wanted sole custody of Isayah, would allow the worker to evaluate his apartment, and was willing to facilitate visits between Isayah and Matthew.
Later in the day on March 17, however, appellant was arrested because of accusations made against him by Tonya. Isayah was taken to a foster home; the next day, he was transferred to the same foster home as Matthew. On March 19, the Department filed an amended petition alleging that Isayah came within the provisions of section 300, subdivision (g), because appellant "is incarcerated and was not able to make arrangements for the child." The allegations regarding Tonya under section 300, subdivisions (b) and (j) from the original petition were repeated in the amended petition. Although the detention request accompanying the amended petition sought a drug and alcohol evaluation of appellant, the amended petition itself did not plead any factual basis for jurisdiction as to appellant other than his arrest, incarceration, and alleged inability to make arrangements for Isayah's care.
In its detention report dated March 20, the Department recommended that Isayah be detained, but with the Department given the authority to release him if appellant complied with the requested substance abuse evaluation and demonstrated that he could provide a safe and stable environment for the child. The report noted that when Isayah was placed in appellant's custody on March 3, appellant had been asked to remain in contact with Marin County Child Protective Services, but did not make contact until March 17, and that appellant had been encouraged not to bring Isayah to Tonya's apartment because her visits with him were to be supervised. These concerns were not reflected in the amended petition, however, and the detention report noted that when contacted on March 17, appellant had "presented cooperative," and had denied Tonya's allegations that he had threatened her.
A detention hearing on the amended petition was held on March 21. At the hearing, appellant's counsel informed the court that appellant's niece and nephew in Redding, Eric and Paula T., were interested in taking custody of both Isayah and Matthew, or at least Isayah. Appellant contended that his arrest was the result of false charges made against him by Tonya. His counsel indicated that no criminal charges had been filed against him, and appellant noted that although he might face parole violation charges,[5] he was scheduled to be discharged from that parole on August 3. Tonya's counsel indicated that Tonya's sisters were also interested in taking both boys, even though her sisters were not on good terms with Tonya. Matthew had been placed with one of these aunts, Deirdra B., for 18 months during the course of the previous dependency proceedings in Sonoma County. The court *203 ordered that Isayah remain in the foster home with Matthew pending a jurisdictional hearing, and continued the hearing date, as to both children, from March 25 to April 8.
Prior to the April 8 hearing, the Department filed an addendum to its earlier jurisdictional report. In an interview with the social worker on March 25, appellant had admitted exhibiting poor judgment in going to Tonya's apartment with Isayah, because he knew Tonya's visits with Isayah were supposed to be supervised. It also reported that appellant was very much concerned with Isayah's welfare and wanted to place him with his relatives in Redding, Eric and Paula, with a view to their ultimately adopting him. The social worker went to Redding on March 31 to interview Eric and Paula, and reported that they "were very cooperative and seemed very appropriate for the placement of Isayah," confirming that they wanted to adopt. They already had two children, and Paula was a "stay-home mother" who was about to start a small family day care business.
The social worker also interviewed the boys' maternal aunt, Deirdra, who knew both children and had cared for Matthew for 18 months during the earlier Sonoma County proceedings. She was financially stable, was willing to take both boys and possibly to adopt them, and agreed to look for a larger home than her current studio apartment in order to accommodate the children. The social worker had also talked to Tonya, who stated that she preferred to have the children remain with someone on her side of the family. On April 2, Tonya called the social worker to report that she had lost her apartment, was staying with friends, and would be entering a residential treatment program on April 4.
At the jurisdictional hearing on April 8, the parties requested that the case be referred to mediation, and the court agreed. The court made no change in Isayah's or Matthew's joint foster home placement, and set a contested dispositional hearing for April 25.
The April 25 dispositional hearing began with a discussion among counsel that resulted in an agreement that Tonya would receive additional reunification services, that Matthew and Isayah would remain in their foster home placement pending further proceedings, and that both parents would have visitation.[6] Appellant and Tonya stipulated that the children had been removed on an emergency basis, and waived their rights to contest jurisdiction. The court found a factual basis for the petition under section 300, subdivisions (b) and (j), but the allegations under section 300, subdivision (g)  the only allegations as to appellant that were pleaded in the amended petition  were dropped. The court ordered both Isayah and Matthew detained together in their then-current foster home placement, pending the provision of further services and an evaluation of possible relative placements by the Department, and set a dispositional hearing for May 20, which was later continued to May 30.
The Department submitted a disposition report dated May 20. By the time the *204 report was prepared, Tonya had pled guilty to a drug possession charge, and was in a residential drug treatment program in Marin County. She was willing to give up her rights to Isayah and Matthew if they were both placed with Deirdra. Appellant had apparently been moved to San Quentin prison; he was still being detained in connection with a possible parole violation, but had not been charged criminally. Appellant "expressed great interest in" Isayah, but he was willing to relinquish his parental rights if Isayah were placed with his relatives in Redding, who were reported to be "very able and willing to provide temporarily and permanently for Isayah."
The May 20 disposition report recommended that the petition be sustained as to both Isayah and Matthew under section 300, subdivisions (b) and (j), but noted that the allegation against appellant under subdivision (g) had been dismissed, and that appellant was a "non[-]offending parent." Nonetheless, the report opined that "returning custody of Isayah to [appellant] would be detrimental to the safety, protection, or physical and emotional well being of the child," citing section 362.2 [sic], subdivision (a).[7] This was "not just because [appellant] is incarcerated, but because [appellant] did not cooperate with the Department after the child was returned to him," in that he "brought [Isayah] to [Tonya's] apartment against the recommendations of the Department and got involved in altercations with the mother in the presence of the child," acts that "demonstrated poor judgment" on appellant's part. Further, the report characterized appellant's "insist[ence] on placing Isayah with his relatives in Redding" as being "certainly ... insensitive to the child's needs and interfer[ing] with bonding between the child and his mother and the relationship of the children" (i.e., Isayah's sibling relationships with Matthew and Ashley). For these reasons, and because of appellant's "long criminal history," the Department believed that Isayah would be "at substantial risk of serious detriment" if he were returned to appellant.
The disposition report recommended that at the end of the school year, both children be placed with Tonya's sister Deirdra, assuming she completed the requirements to qualify as their caretaker. It also recommended that both appellant and Tonya be provided with reunification services for six months.
After hearing evidence and argument of counsel at the contested dispositional hearing on May 30, the trial judge indicated that she was not particularly troubled by appellant's having taken Isayah to visit Tonya when he should not have done so, and that "[t]hat would not be enough to remove a child from the parent alone since there is no showing that it caused any damage to this child." Nonetheless, the judge opined that "it's very clear that it would be detrimental to place [Isayah] with [appellant] at the present time since he's unavailable. He's not able to take care of his child until he finishes off his term and is released from San Quentin. [¶] ... [¶] I don't think that there's any doubt that you can make on the facts of this case a finding of detriment because of the inability to place the child with the father. Because his option of sending this child to Redding, which is at least four hours away, maybe five on a bad day of driving, [would] make it almost impossible to promote reunification and for these children *205 to maintain their sibling relationship. The reunification is the primary issue." After noting that there were favorable indications of possible reunification as to both parents, and that appellant and Tonya had joint custody of Isayah, the judge commented that Tonya's "right to a reunification plan cannot supersede [sic  be superseded by] [appellant's] right to place the child with a relative of his, who incidentally has had no real relationship with this child."
The judge went on to make a formal oral finding that "[t]here's clear and convincing evidence that the children must be removed from the custody of Tonya K[.] and Charles C[.] pursuant to [section] 361. The reasons for the removal are the unavailability of both of these parents to properly care for the children at the present time. Return would create a substantial danger to the children and there's no reasonable means to protect them without removal." The minute order that the judge signed after the hearing confirmed this finding in the following language: "Court finds by clear and convincing evidence that the children must be removed from the custody of Tonya ... and [appellant.] [¶] Pursuant to [section] 361, the reasons for the removal are: [¶] unavailability of both parents at present time[;][¶] return would create substantial danger to child [sic  children] and no reasonable means to protect without removal[;][¶] children have been left without provision for support [;][¶] reasonable efforts were made in Sonoma County to prevent/eliminate need for removal and the removal in Marin County was a matter of urgent necessity." (Unnecessary capitalization omitted.)
Based on this finding, the court declared both Matthew and Isayah dependents of the court under section 300, subdivisions (b) and (j); directed that the children remain in their foster home until the end of the school year and then be placed with Deirdra; ordered reunification services for Tonya and appellant; and provided for appellant to have visitation at least weekly following his anticipated release from custody in August.[8] This timely appeal followed.

II. DISCUSSION
Appellant makes two principal arguments on appeal.[9] The first is that the *206 trial court erred in declining to place Isayah in appellant's custody under section 361, subdivision (c) (section 361(c)), without making findings, supported by clear and convincing evidence, that appellant either was not able to protect Isayah from future harm, or could not arrange for his care while appellant was incarcerated.[10] The second is that the trial court's dispositional order declining to place Isayah with appellant was not supported, as it was required to be under section 361.2(a), by a finding, based on clear and convincing evidence, that placement of Isayah with appellant would be detrimental to Isayah's safety, protection, or physical or emotional well-being.
"We begin by noting that in dependency proceedings the burden of proof is substantially greater at the dispositional phase than it is at the jurisdictional phase if the minor is to be removed from his or her home. [Citations.] [¶] This heightened burden of proof is appropriate in light of the constitutionally protected rights of parents to the care, custody and management of the children. [Citation.] [¶]' "Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood." [Citation.] "In furtherance of these principles, the courts have imposed a standard of clear and convincing proof of parental inability to provide proper care for the child and resulting detriment to the child if it remains with the parent, before custody can be awarded to a nonparent." [Citation.]' [Citation.]" (In re Basilio T. (1992) 4 Cal.App.4th 155, 169, 5 Cal.Rptr.2d 450, italics in original quoted source; limited on other grounds by In re Cindy L. (1997) 17 Cal.4th 15, 31-35, 69 Cal.Rptr.2d 803, 947 P.2d 1340.)
We review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on the clear and convincing evidence standard. (In re Luke M. (2003) 107 Cal.App.4th 1412, 1426, 132 Cal.Rptr.2d 907 (Luke M.).) Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt. (Ibid.)

A. Retention of Custody by Nonoffending Parent
As relevant to this case, section 361(c) provides that: "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following: [¶] (1) There is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor or would be if the minor were returned home, and there are no reasonable *207 means by which the minor's physical health can be protected without removing the minor from the minor's parents' or guardians' physical custody.... The court shall ... consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm. [¶].... [¶] (5) The minor has been left without any provision for his or her support, or a parent who has been incarcerated or institutionalized cannot arrange for the care of the minor...." (Italics added.)
At the time the petition was filed in this case, Isayah was residing with Tonya, but appellant had been awarded joint legal custody of him. Moreover, between the filing of the petition and appellant's arrest, appellant had physical custody of Isayah for two weeks, and no allegations under section 300 were ever established as to appellant, whom the Department expressly conceded was a nonoffending parent. Therefore, under the plain language of section 361(c), once Isayah was removed from Tonya's custody, the trial court was required to place him with appellant unless the court found by clear and convincing evidence either or both of the following circumstances: (1) that there were no reasonable means by which Isayah could be protected[11] without removing Isayah not only from Tonya's but also from appellant's physical custody, or (2) that appellant, once incarcerated, was unable to arrange for Isayah's care.
The record makes clear that in finding it necessary to remove Isayah from appellant's custody, the trial court relied entirely on appellant's unavailability by reason of his incarceration, and on the emotional implications of the consequent need to send Isayah to Redding to live with appellant's relatives. The trial court explicitly rejected the Department's concerns about appellant's own personal behavior while Isayah was in his custody for two weeks in early March, stating that "[t]hat would not be enough to remove a child from the parent alone since there is no showing that it caused any damage to the child." Moreover, even if the trial court had found that removal from Tonya's custody was needed to protect Isayah from harm, the court still would have been required at least to "consider ... allowing [appellant] to retain custody as long as [he] present[ed] a plan demonstrating that he [would] be able to protect the child from future harm." (§ 361, subd. (c)(1), italics added.) The trial court's failure to discuss this issue in either its oral findings or its written order confirms our conclusion that its decision under section 361(c) stemmed from appellant's incarceration and its consequences, and did not reflect any concern that appellant would not have been a suitable custodial parent if he had been able to take care of Isayah personally in Marin or somewhere nearby.
The cases addressing removal by reason of a custodial parent's incarceration, under section 300, subdivision (g) (section 300(g)) have held that "[t]here is no `Go to jail, lose your child' rule in California. [Citation.]" (In re S. D. (2002) 99 Cal.App.4th 1068, 1077, 121 Cal.Rptr.2d 518.) If an incarcerated parent can make suitable arrangements for a child's care during his or her incarceration, "the juvenile court ha[s] no basis to take jurisdiction in th[e] case, and [the social services agency] simply ha[s] no say in the matter. [Citation.]" (Ibid., citing In re Aaron S. (1991) 228 Cal.App.3d 202, 278 Cal.Rptr. 861.) Yet in the present case, where the *208 allegation against appellant under section 300(g) was dismissed, he still lost his child by reason of his incarceration. We do not believe the Legislature intended section 361(c) (or section 361.2(a), for that matter) to be interpreted so as to permit a result that the courts have held to be unacceptable under section 300(g).
In our view, the applicable statutes must be read and applied in the appropriate constitutional context. "A parent's right to care, custody and management of a child is a fundamental liberty interest protected by the federal Constitution that will not be disturbed except in extreme cases where a parent acts in a manner incompatible with parenthood. [Citations.]" (In re Marquis D. (1995) 38 Cal.App.4th 1813, 1828, 46 Cal.Rptr.2d 198 (Marquis D.).) "[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment. [Citations.]" (Santosky v. Kramer (1982) 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599.) Thus, the constitutional right of parents to make decisions regarding their children's upbringing precludes the state from intervening, in the absence of clear and convincing evidence of a need to protect the child from severe neglect or physical abuse. (Id. at pp. 769-770, 102 S.Ct. 1388; Marquis D., supra, 38 Cal.App.4th at pp. 1828-1829, 46 Cal.Rptr.2d 198.)
It is true that once the juvenile court has taken jurisdiction over a child, that court has greater statutory authority than a family law court to intervene in the decisionmaking of a custodial parent  even a nonoffending one  in order to protect a child's physical safety and emotional well-being. (See Luke M., supra, 107 Cal.App.4th at p. 1423, 132 Cal.Rptr.2d 907.) Nonetheless, a nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be "detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a); see Marquis D., supra, 38 Cal.App.4th at p. 1829, 46 Cal.Rptr.2d 198 [clear and convincing evidence of detriment required to justify denial of placement with noncustodial parent]; In re Aaron S., supra, 228 Cal.App.3d at pp. 211-212, 278 Cal.Rptr. 861 ["Dependency proceedings must ... safeguard parents' rights to raise their own children whenever this can be done without prejudice to the welfare of the child. [Citation.]"].)
In some instances, where no statutorily defined harm to the minor is proved, the need to establish dependency has not been shown merely because the custodial parent relies on the temporary custodial assistance of suitable third parties. (See In re Rocco M. (1991) 1 Cal.App.4th 814, 824, 2 Cal.Rptr.2d 429["[T]he fact that a child has been left with other caretakers will not warrant a finding of dependency if the child receives good care. [Citations.]"].) Similarly, in determining whether a detriment warranting denial of custody to a nonoffending parent has been shown in a particular case, care must be taken not to lose sight of the fact that such a parent generally enjoys the right to make reasonable decisions about where and with whom the child will reside.
This brings us to the question whether removal under section 361(c) was justified by the purely emotional detriment to Isayah that the trial court found would result from sending him to Redding. In this connection, we note that paragraph (1) of section 361(c) is not a model of clarity. Its first clause authorizes removal based on a "substantial danger" either to the minor's "physical health," or to the minor's "safety, *209 protection, or physical or emotional well-being." Its second clause, however, appears to limit removal to situations in which removal is necessary to protect the minor's "physical health," without mentioning the minor's "emotional well-being." This lack of clarity is compounded by the fact that the final clause does not specify what sorts of "future harm" the nonoffending parent must prove that he or she can prevent. We might be able to reconcile the first two clauses, for the most part, by assuming that any threat to "safety, protection, or physical ... well-being" is also a threat to "physical health." That would not assist us in resolving this case, however, because there was no evidence, and the trial judge did not find, that placing Isayah with appellant (or his relatives in Redding) would pose any threat whatsoever to Isayah's physical health or safety.
The case law, while not discussing the issue explicitly, appears to interpret paragraph (1) of section 361(c) to require a threat to physical safety, not merely emotional well-being, in order to justify removal. (See In re Jasmine G. (2000) 82 Cal.App.4th 282, 288-290, 98 Cal.Rptr.2d 93 [where parents agreed to discontinue using corporal punishment, teenager could not be removed from parents' homes based solely on parents' lack of understanding of teenager's "issues"]; In re Basilio T., supra, 4 Cal.App.4th at pp. 169-172, 5 Cal.Rptr.2d 450 [where there was no evidence of direct harm to children from parents' domestic violence, children could not be removed based on parents' insufficient participation in counseling].) We concur in this interpretation, which is bolstered by the existence of a separate provision within section 361(c) governing removal based on emotional harm, which requires "severe emotional damage, as indicated by extreme anxiety, depression, withdrawal, or untoward aggressive behavior...." (§ 361(c)(3).) If we interpreted paragraph (1) to permit removal based on a danger only to the minor's "emotional well-being," this would violate the rule that a statute should not be construed so render any of its provisions superfluous. (In re J.W. (2002) 29 Cal.4th 200, 209-210, 126 Cal.Rptr.2d 897, 57 P.3d 363.)
Our review of the record reveals that it is far from clear whether the trial court had the foregoing legal framework in mind when making the findings and orders that resulted from the May 30 hearing. In denying appellant's request that Isayah be placed with his relatives in Redding pending his release from custody, the trial court focused on the detriment to Isayah's reunification with Tonya, and to his bond with Matthew, that would result from his being sent to a location at least four hours drive away. But there was no evidence that Isayah's placement in Redding would involve a threat to Isayah's physical health and protection from future harm, which are the only statutory obstacles to a nonoffending parent retaining custody under section 361(c). On the contrary, the social worker who had visited appellant's Redding relatives described them as "wonderful" and "[v]ery willing and able," and pronounced them "very appropriate for the placement of Isayah." Moreover, given the suitability of these relatives, there was no evidence supporting a finding that appellant was unable to arrange for Isayah's care due to his incarceration. (See In re S. D., supra, 99 Cal.App.4th at p. 1077, 121 Cal.Rptr.2d 518; In re Aaron S., supra, 228 Cal.App.3d at p. 212, 278 Cal.Rptr. 861.)
In short, it is clear from the record that the trial court's decision not to place Isayah with appellant was based solely on the concern that allowing appellant to retain custody  with the plan of delegating it to his relatives at least pending his incarceration  would have entailed moving Isayah *210 to Redding, which would have interfered with Tonya's reunification plan and with Isayah and Matthew's sibling bond. Laudable as that concern might be, the language of section 361(c), interpreted as we have outlined above and with a due regard for appellant's constitutional interests as a parent, simply did not permit the court to treat it as dispositive. (Cf. In re James T. (1987) 190 Cal.App.3d 58, 66-67, 235 Cal.Rptr. 127 [legislative solicitude for parental rights embodied in section 361 precludes juvenile court from relying on less stringent criteria of detriment and best interests when determining whether to remove child from parents].)
Under the statute, the questions before the court were whether appellant, as a nonoffending parent, had failed to demonstrate that he could protect Isayah from future physical harm, and whether, as an incarcerated parent, he was unable to arrange for Isayah's care in a suitable setting. The court did not find by clear and convincing evidence that either of these conditions existed. Nor does the state of the evidence permit us to imply any such findings. (Marquis D., supra, 38 Cal.App.4th at p. 1825, 46 Cal.Rptr.2d 198 ["where the trial court has failed to make express findings the appellate court generally implies such findings only where the evidence is clear"].) Accordingly, the trial court's dispositional order must be reversed.

B. Dispositional Placement
As already noted, appellant contends that the trial court erred not only in finding grounds for removal of Isayah under section 361(c), but also in denying appellant's request that Isayah be placed in his custody by the court's dispositional order under the provisions of section 361.2(a). The distinction between allowing a nonoffending parent to retain custody under section 361(c), on the one hand, and awarding custody to a noncustodial parent under section 361.2(a), on the other hand, was muddied in this case by a lack of factual clarity regarding whether appellant should be considered a custodial or noncustodial parent. He had joint legal custody of Isayah at all relevant times, but Isayah's primary physical custodian changed rather rapidly, at the outset of the proceedings, from Tonya to appellant and then, two weeks later, to a foster home. Understandably, therefore, it is somewhat unclear from the record which statute the trial court considered applicable. We need not unravel this knot in order to decide this case, however, because we find error under both sections.
Section 361.2(a) provides that "When a court orders removal of a child pursuant to [s]ection 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of [s]ection 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (Italics added.) "A court's ruling under [section 361.2(a)] that a child should not be placed with a noncustodial, nonoffending parent requires a finding of detriment by clear and convincing evidence. [Citation.]" (Luke M., supra, 107 Cal.App.4th at p. 1426, 132 Cal.Rptr.2d 907.)
In the present case, there is no dispute that appellant meets the criteria set forth in the first sentence of section 361.2(a), or that appellant requested custody of Isayah. Appellant argues that the trial court's finding of detriment in this case *211 was not made under the evidentiary standard of clear and convincing evidence, and that even if it was, substantial evidence does not support a finding of detriment by clear and convincing evidence.
The trial court found that it was "very clear that it would be detrimental to place this child with [appellant] at the present time since he's unavailable" and "not able to take care of his child" until his release from incarceration. As already noted in connection with our discussion of section 361(c), however, a parent may have custody of a child, in a legal sense, even while delegating the day-to-day care of that child to a third party for a limited period of time.[12] Given the case law holding that the juvenile dependency system has no jurisdiction to intervene when an incarcerated parent delegates the care of his or her child to a suitable caretaker (see In re S. D., supra, 99 Cal.App.4th at p. 1077, 121 Cal.Rptr.2d 518; In re Aaron S., supra, 228 Cal.App.3d at p. 212, 278 Cal.Rptr. 861), we do not view appellant's plan to send Isayah to his Redding relatives pending his relatively short incarceration as constituting a sufficient showing of detriment under section 361.2(a).
The trial court also found detriment on the same grounds discussed earlier in connection with section 361(c), that is, the fact that placing Isayah with appellant would interfere with his reunification with Tonya and his sibling bond with Matthew. We concur in the holding of Luke M., supra, 107 Cal.App.4th at pp. 1422-1423, 132 Cal.Rptr.2d 907 that sibling bonds may properly be considered in determining detriment for the purpose of making a placement decision under section 361.2(a). The evidence of detriment in the present case, however, was nowhere near as strong as it was in Luke M. In the present case, Isayah was only two and a half at the time of the May 30 hearing, and he had spent the majority of his short life  a period of 18 months  living in a separate home from his brother, although they visited at least every other week. The children involved in Luke M. were between the ages of five and ten, and had lived together all their lives. (See id. at pp. 1416, 1426, 132 Cal.Rptr.2d 907.) Also, the children in Luke M. faced a move to Ohio, which is far more distant from San Diego than Redding is from Marin. In addition, it is undisputed that appellant's Redding relatives were both willing and able to facilitate visitation between Isayah and Matthew, to a far greater degree than the "telephone calls and occasional visits" that the social worker in Luke M. testified would be inadequate. (Id. at p. 1427, 132 Cal.Rptr.2d 907.)
Section 361.2, subdivision (c) requires that the court make findings, either in writing or orally on the record, as to the basis for its determination under section 361.2(a). In this case, those findings reveal that the trial court's placement decision under section 361.2(a) was based on a combination of the impermissible consideration of appellant's incarceration, and the permissible consideration of Isayah's bond with Matthew. Thus, we cannot determine from the record whether the trial court would have found clear and convincing evidence of detriment based on the harm to the sibling bond alone, or in combination with the harm to reunification *212 with Tonya, which we assume for the sake of argument was also a legitimate consideration. We therefore must reverse and remand on this issue as well.

III. DISPOSITION
We have, of necessity, reviewed the trial court's decision based on the facts and record as they stood at the time of the dispositional hearing, which occurred about a year ago. (See generally In re Zeth S. (2003) 31 Cal.4th 396, 413-414, 2 Cal.Rptr.3d 683, 73 P.3d 541 [normal rules precluding consideration of new evidence on appeal apply equally in juvenile dependency cases].) Yet "we cannot simply unwind a juvenile case and presume that circumstances cannot have changed in the interim. They always do." (In re S. D., supra, 99 Cal.App.4th at p. 1083, 121 Cal.Rptr.2d 518.)
Accordingly, although we reverse the trial court's dispositional order, this does not necessarily mean that the trial court must now permit appellant to take custody of Isayah or to place him with his relatives in Redding. Rather, because we lack information as to any court orders or factual developments that may have intervened since the entry of the dispositional order on May 30, 2003, and cannot speculate as to their possible effect on the current situation of Isayah and his family members, we leave it to the sound discretion of the trial court to determine what procedural steps, and what result, are appropriate at this juncture in light of our reversal, the grounds on which it was based, and the current state of affairs in Isayah's family.
We concur: KLINE, P.J. and LAMBDEN, J.
NOTES
[1] We use first names for all of the family members involved in this proceeding, not out of disrespect, but in order to maintain confidentiality.
[2] All further unspecified references to dates are to the year 2003.
[3] All further unspecified references to statutes are to the Welfare and Institutions Code.
[4] Evidently, appellant had an apartment in Santa Rosa, but also had a trailer home in which he lived at times.
[5] At the time, appellant was on parole due to a conviction for possession of methamphetamines, for which he had served a five-year prison term. Appellant also was convicted of homicide in 1969.
[6] We note with some concern the indications in the record of this hearing that the personnel in charge of the Marin County Jail, where appellant was housed at the time, were refusing to comply with the court's earlier order that appellant was to have contact visits with Isayah, on the ground that they disagreed with the order. We would find it profoundly troubling if law enforcement personnel unilaterally declined to obey a valid court order, rather than pursuing appropriate legal avenues to contest it. In any event, it appears that the problem was subsequently resolved, and we trust it will not recur.
[7] The intended reference appears to have been to section 361.2, subdivision (a) (section 361.2(a)).
[8] At the hearing, appellant expressed a strong desire for visitation after his release, but explained that he did not want further visits while he was still in custody, as it had proved to be very upsetting to Isayah to see his father in prison.
[9] Appellant also argues that the trial court's order should be reversed based on insufficient compliance with the notice requirements of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). We recognize that neither Tonya nor appellant has the right to waive the rights of the relevant Indian tribe(s) under the ICWA. (See, e.g., In re Jennifer A. (2002) 103 Cal.App.4th 692, 706, 127 Cal.Rptr.2d 54.) Nonetheless, we question whether appellant has standing to raise the issue on appeal. It is Tonya, not appellant, who is the source of Isayah's Indian heritage. The trial court's order placed Isayah (after a short delay to permit Matthew to finish the school year in Marin) in the custody of Tonya's sister Deirdra, who shares Tonya and Isayah's Indian ancestry. This result accords with the custody priorities under the ICWA. (See Cal. Rules of Court, rule 1439(k)(3).) Thus, we fail to see how proper ICWA notice could possibly have resulted in a trial court order more favorable to appellant. Intervention by the relevant tribe would only have made it less likely that appellant would receive custody of Isayah. Accordingly, appellant does not appear to have been personally aggrieved by any deficiencies in the ICWA notice, so as to give him standing to appeal. (See generally In re Crystal J. (2001) 92 Cal.App.4th 186, 189-190, 111 Cal.Rptr.2d 646 [an appellant must demonstrate error affecting his or her own interests in order to have standing to appeal].) In any event, because we remand for rehearing on other grounds, we need not address the ICWA argument on its merits. We trust that the trial court, on remand, will reexamine the question whether proper notice under the ICWA has been given, and if not, will ensure that this occurs in a timely manner before conducting further proceedings. (See generally In re Asia L. (2003) 107 Cal.App.4th 498, 506-509, 132 Cal.Rptr.2d 733.)
[10] The Department's brief does not address appellant's arguments under section 361(c); it argues only that section 361.2(a) does not apply to this case. Appellant's reply brief argues that the Department has waived any opposition to appellant's section 361(c) arguments by failing to address them. We share appellant's frustration with the inadequacy of the Department's responsive brief on this appeal. Nonetheless, in the interests of justice, and for the guidance of the trial court, we will address the issues on the merits.
[11] Protected from what is an issue we discuss post.
[12] It is not clear from the record whether appellant intended to take Isayah back into his home, or leave him with his relatives in Redding, after appellant's anticipated release from custody on August 3. It is clear, however, that the trial court's decision did not turn on this point. Moreover, if it had, this should have been communicated to appellant so that he could have made his intentions clear, or even possibly altered them, if he could thereby affect the court's decision.