Filed 7/29/14  In re Z.T. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re Z.T., a Person Coming Under the Juvenile Court of Law. | B251595 |
| ————————————————— | (Los Angeles County Super. Ct. No. CK99579) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| BILL S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Marguerite D. Downing, Judge.  Reversed with directions.

Eva E. Chick, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Merrill Lee Toole, under appointment by the Court of Appeal, for Minor and Respondent.

—————————————————

Bill S. (father) appeals from the juvenile court's dispositional order finding placement of his daughter, Z.T., with him in Oklahoma City would be detrimental to her emotional well-being under Welfare and Institutions Code section 361.2, subdivision (a).[1] Finding the trial court's determination of detriment was not supported by clear and convincing evidence, we reverse and remand the case to the juvenile court for a new dispositional hearing.

### Statement of Facts

Nine-year-old Z.T. is the daughter of father and T.T. (mother). Z.T. lived with mother and her half siblings, C.A., age three, and J.A., age twenty-one months, who's father, Jorge A., was a frequent visitor at mother's home.[2] On May 16, 2013, the Department of Children and Family Services (DCFS) learned police searched mother's home pursuant to an investigation into whether Jorge A. was selling drugs and found loaded firearms, ammunition, two pounds of marijuana, and methamphetamine within access of the children. During the search, mother admitted to using drugs.

DCFS detained the children and filed a juvenile dependency petition under section 300, subdivision (b) on May 21, 2013, alleging mother and Jorge A. placed the children in an endangering home environment where Jorge A. sold illicit drugs, and loaded firearms, ammunition, marijuana, and methamphetamine were within the children's reach. The petition further alleged mother's history and current use of illicit drugs and Jorge A.'s failure to protect the children from exposure to mother's drug use endangered the children's physical health and safety and put them at risk of physical harm.

Father was not named in the petition's allegations. According to DCFS's jurisdiction/disposition report, he lived in Oklahoma City, where he was a basketball coach. He had five other children between 11 and 20 years old who also resided in

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] Mother, Jorge A., C.A. and J.A. are not party to this appeal. We have omitted most of the facts relating to mother and Jorge A.'s drug use and criminal history and C.A. and J.A.'s dependency proceedings, as such facts are not relevant to father's appeal.

2

Oklahoma City. He told DCFS he saw Z.T. a minimum of twice per month and provided mother with monthly financial support of $250. He reportedly tried to maintain regular contact with Z.T. but found it impossible due to his strained relationship with mother. Father denied any knowledge of the allegations against mother and Jorge A., although he admitted mother had occasionally smoked marijuana when they were together. Father requested care of Z.T., said he could provide her with all basic necessities, and noted Z.T. could bond with her older siblings.

At the detention hearing, the juvenile court found there was a prima facie showing of jurisdiction under section 300, subdivision (b) and a prima facie case for detaining Z.T., and ordered a pre-release investigation of the home of Z.T.'s maternal aunt. At the pre-release investigation hearing on May 30, 2013, at which father personally appeared, the juvenile court ordered DCFS to interview and evaluate father for the possibility of releasing Z.T. to him and to interview Z.T about her desire to live with father and her relationship with him. The court appointed a Court Appointed Special Advocate (CASA) for Z.T. to assist in father's evaluation. The court ordered that Z.T. continue to be detained, as DCFS could not recommend that Z.T., C.A., and J.A. be released to their maternal aunt due to her apartment's space constraints.

According to the jurisdiction/disposition report, Z.T. told DCFS she would like to live with father if unable to live with mother, and would like to learn how to play basketball from him and see her older siblings. She also stated she would like to live with father if he lived in California, but would not like to move to Oklahoma because she would be unable to see her mother or younger siblings as often as she would like.

Z.T. was originally placed in a separate foster care from her siblings, but was later moved to the same foster home. Her foster mother reported her siblings were excited to have their older sister living in the same home. During dependency proceedings, Z.T. attended elementary school in California.

DCFS recommended Z.T. be removed from mother's custody and placed in out-of-home care at DCFS's discretion. DCFS also recommended reunification services for father and unmonitored visits with Z.T.

3

On June 12, 2013, father appeared for a hearing in which the juvenile court found him to be Z.T.'s presumed father and denied his request to release Z.T. to him. The court ordered DCFS to facilitate unmonitored visits between father and Z.T. The court later ordered DCFS to file a supplemental report addressing whether CASA had visited father's home in Oklahoma City. DCFS reported to the court that it had no information from CASA and no one had attempted to contact father regarding a home visit.

At the adjudication hearing on August 26, 2013, mother and Jorge A. admitted the petition's allegations, and the court declared Z.T., C.A., and J.A. to be dependents of the court. The court ordered DCFS to file supplemental reports to address placement and set a disposition hearing for September 9, 2013.

At the disposition hearing, father's counsel requested the court place Z.T. with father under section 361.2, arguing DCFS failed to show by clear and convincing evidence that placement with him would be detrimental to Z.T. Father's counsel noted father had a relationship with Z.T., he was willing to work with mother to allow her visitation, and Z.T. had expressed interest in living with him. DCFS opposed placement with father, arguing it would be detrimental to Z.T. because she was ambivalent about living with father, lacked a substantial connection to him, and would be away from her siblings, and DCFS would have difficulty supervising the case in Oklahoma.

The court found Z.T. was ambivalent about living with father, had never lived with him, enjoyed being placed with C.A. and J.A., and had started school. The court also found placement with father would make reunification with mother difficult, as father and mother had a rocky relationship. Based on these factors, the court determined placement with father would be detrimental to Z.T. and declared it would suitably place her elsewhere. The court ordered father to cooperate with DCFS and granted him unmonitored visits with Z.T., and ordered an Interstate Compact on the Placement of Children (ICPC) investigation of father's home in Oklahoma City (Fam. Code, §§ 7900, et seq.). Father timely appealed the court's dispositional orders.

4

**Discussion**

**1.     Section 361.2, subdivision (a)**

There is no dispute father was a nonoffending, noncustodial parent under section 361.2, subdivision (a), or that father requested custody of Z.T.  Father argues the trial court's finding that it would be detrimental to Z.T. to be placed with him was not made under the evidentiary standard of clear and convincing evidence, and that even if it was, substantial evidence does not support the finding.  Although the minor disagrees, DCFS concedes this argument has merit, and we concur.

"Section 361.2, subdivision (a) governs placement of a child after the dependency court has acquired jurisdiction of a child." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1420.)  When a court orders removal of a child under section 361, the court first must determine whether there is a parent who wants to assume custody who was not residing with the child at the time the events occurred that brought the child within the provisions of section 300. (§ 361.2, subd. (a).)  "If that parent requests custody, the court *shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a), italics added.)

"'[P]arents have a fundamental interest in the care, companionship, and custody of their children.' [Citation.]" (*In re Z.K.* (2011) 201 Cal.App.4th 51, 64.)  Thus, "a nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child.'" (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 697.)  "A detriment evaluation requires that the court weigh all relevant factors to determine if the child will suffer net harm." (*In re Luke M.*, *supra*, 107 Cal.App.4th at p. 1425.)  The party opposing placement has "the burden to show by clear and convincing evidence that the child will be harmed if the nonoffending parent is given custody." (*In re Z.K.*, *supra*, 201 Cal.App.4th at p. 70.)  "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt. " (*In*

5

*re Luke M.*, *supra*, 107 Cal.App.4th at p. 1426.) "We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the [child] would suffer such detriment. [Citations.]" (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569.)

Our review of the record reveals the juvenile court's finding of detriment is not supported by substantial evidence, as DCFS concedes. Notably, DCFS failed to present, and the juvenile court failed to consider, evidence of potentially relevant factors related to whether father's circumstances or living situation in Oklahoma would be detrimental to Z.T. Rather, the trial court determined Z.T. would suffer detriment if placed with father based on Z.T.'s ambivalence about living with father in Oklahoma, her weak relationship with him, her positive relationship with her siblings, her school attendance in California, and the potential for interference with mother's reunification plan. These factors fail to establish substantial evidence that Z.T. would suffer detriment.

As explained in *In re Luke M.*, *supra*, 107 Cal.App.4th 1412, a finding of detriment may be supported by evidence that a child will suffer emotional detriment from separation from their siblings. The evidence of detriment from sibling separation in the present case, however, was nowhere near as clear as in *In re Luke M.* There, the children's sole request to the social worker was not to be separated, the children cried and became depressed when the social worker spoke to them about separating, the social worker was concerned the children would end up with behavioral issues if separated, and evidence indicated "the siblings' bond helped them survive and was much closer than in normal sibling relationships." (*Id.* at pp. 1426-1427.) From these facts, the court held substantial evidence supported the juvenile court's finding that the children would suffer detriment if they were separated and placed with their father in another state. (*Id.* at p. 1427.) Here, although Z.T. stated she would not like to move to Oklahoma because she would be unable to see her siblings as often as she would like, she also expressed interest in living with father to see her older siblings. No evidence indicated Z.T. got upset when confronted with the possibility of separating from C.A. and J.A., would develop

6

behavioral issues if separated from them, or shared a bond with them that was closer than normal sibling relationships. Thus, her relationship with C.A. and J.A. was insufficient to support a finding that placement with father would be detrimental.

The juvenile court also found placement with father would be detrimental to Z.T. because she was ambivalent about living with him in Oklahoma. Yet there was no evidence Z.T.'s ambivalence would cause her any measurable harm. Although Z.T. stated she would not like to live with father, she also told DCFS she *would* like to live with him to see her older siblings and learn how to play basketball. Although the juvenile court was entitled to consider Z.T.'s placement preference (see *In re John M.*, *supra*, 141 Cal.App.4th at p. 1570), it was not entitled to conclude from her ambivalence that clear and convincing evidence indicated she would suffer detriment.

The juvenile court also based its detriment finding on Z.T.'s weak relationship with father, her school attendance in California, and the potential for interference with mother's reunification. Father stated, however, that he saw Z.T. at minimum twice per month, supported her financially every month, and tried to maintain regular contact with her. He also made it clear he was willing to work with mother to ensure she could visit Z.T. Lastly, there was no evidence Z.T. had a particularly strong bond to her school, teacher, or friends or would suffer emotional harm if required to change schools.

Conspicuously absent from the juvenile court's finding of detriment was any consideration of evidence of the suitability of father or his living situation in Oklahoma because DCFS failed to present such evidence, despite DCFS's burden to show by clear and convincing evidence that a "parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child.'" (*In re Isayah C.*, *supra*, 118 Cal.App.4th at p. 697; *In re Z.K.*, *supra*, 201 Cal.App.4th at p. 70.) The court's inability to consider potentially relevant factors related to father's ability to care for Z.T. together with the weakness of the few factors available the court did consider compels the conclusion that substantial evidence does not support the court's finding that placement with father would be detrimental within the meaning of section 361.2.

7

**2.    ICPC Investigation**

Father argues the trial court abused its discretion in ordering an ICPC investigation as part of its dispositional orders because the investigation was unnecessary, as father had a prior relationship with Z.T. and section 361.2 allows DCFS to inspect a noncustodial parent's home within three months after placing the child with him.  We disagree.

The ICPC is a compact among California and other states to facilitate cooperation in the placement and monitoring of dependent children.  (*In re John M.*, *supra*, 141 Cal.App.4th at p. 1573; *In re Suhey G.* (2013) 221 Cal.App.4th 732, 742.)  It "governs conditions for out-of-state 'placement in foster care or as a preliminary to a possible adoption,'" neither of which involve natural parents.  (*In re John M.*, *supra*, 141 Cal.App.4th at p. 1573.)  "Accordingly, 'compliance with the ICPC is not required for placement with an out-of-state parent.'  [Citations.]"  (*In re Z.K.*, *supra*, 201 Cal.App.4th at p. 66.)  However, "nothing in the ICPC prevents the use of an ICPC evaluation as a means of gathering information before placing a child with such a parent."  (*In re John M.*, *supra*, 141 Cal.App.4th at p. 1572; see also Cal. Rules of Court, rule 5.616(g) [the juvenile court has discretion to use the ICPC as necessary to ensure the child's safety and well-being in placing the child with an out-of-state parent].)  When determining "whether the trial court erred in ordering an ICPC evaluation of father, we apply the abuse of discretion test [citation]."  (*In re Suhey G.*, *supra*, 221 Cal.App.4th at p. 742.)

In the present case, at the time the juvenile court ordered the ICPC investigation, the court had no information on father's living situation because CASA had failed to make court-ordered inquiries.  Thus, the juvenile court was within its discretion to order an ICPC home investigation to gather information for the purposes of determining whether placing Z.T. with father would be detrimental.  (See *In re Z.K.*, *supra*, 201 Cal.App.4th at p. 67.)

**Disposition**

The dispositional order under section 361.2 is reversed and the matter is remanded to the juvenile court for a new dispositional hearing. Because the records contains no evidence of the suitability of father or his living situation in Oklahoma and we lack information as to any court orders or factual developments that may have occurred since the entry of the September 9, 2013 dispositional orders, we leave it to the juvenile court's discretion to consider the ICPC home investigation or other available information and make a placement decision under section 361.2 in a manner consistent with this opinion.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

MILLER, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9