Filed 7/15/16  In re Adrian R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ADRIAN R., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D070018 |
| Plaintiff and Respondent, | (Super. Ct. No. SJ13224) |
| v. | |
| N.R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Daniela Davidian, Deputy County Counsel, for Plaintiff and Respondent.

N.R. appeals the dispositional order in the juvenile dependency case of her minor son, Adrian R. She contends the juvenile court erred by removing Adrian from her custody under Welfare and Institutions Code section 361, subdivision (c)(1).[1] We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this section, we state the facts in the manner most favorable to the juvenile court's order. (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

On January 8, 2016, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b) on behalf of 10-month-old Adrian. The Agency alleged that Adrian had been losing weight for three months and was severely malnourished. The Agency further alleged that, despite a diagnosis of failure to thrive and Agency intervention, N.R. failed to provide Adrian with adequate nutrition and medical care. The Agency concluded that Adrian had suffered or was at substantial risk of suffering serious physical harm or illness as a result of N.R.'s failure to provide him with adequate food and medical treatment.

Adrian's condition came to the Agency's attention following a referral from medical personnel, who noted Adrian's weight loss and N.R.'s failure to attend two medical appointments for Adrian. A public health nurse assisting N.R. encouraged her to attend these appointments and later to take Adrian to urgent care or the emergency room, but N.R. did not do so. N.R. said she was unaware of the first appointment (it was

---

[1]     Further statutory references are to the Welfare and Institutions Code.

scheduled by the public health nurse) and attended a court hearing for her boyfriend instead of going to the second.

Prior to the instant petition, the Agency drafted a voluntary safety plan requiring N.R. to take Adrian to urgent care that day, follow up with an Agency social worker afterward, and address certain cleanliness issues in her home. N.R. took Adrian to urgent care and was instructed to return two weeks later for a failure to thrive assessment. At that assessment, medical personnel diagnosed Adrian with a severe case of failure to thrive and admitted him. A medical doctor treating Adrian reported he had "severe malnutrition" and his condition was "shocking." Adrian had gained almost no weight in the past six months, and his height and weight were noted to be in the "zero" percentile for his age. He weighed only 9 pounds 14.7 ounces; the normal range for a child of his age was between 17 and 20 pounds. Adrian appeared extremely thin, with almost no subcutaneous tissue. After a day in the hospital, however, Adrian was gaining weight. The doctor wrote, "If this trend continues, it will demonstrate that [N.R.] is not feeding him enough to grow and develop. I would discourage him being placed back in her care as I think there is a serious risk to him. How much his potential has already been compromised by his severe malnutrition may become clear over time." N.R.'s self-reported feeding schedule for Adrian was not consistent with his condition, and the

doctor was concerned that N.R. may have "processing issues" with respect to Adrian's care. The Agency filed its petition three days after the failure to thrive assessment.[2]

At Adrian's detention hearing, the juvenile court found the Agency had made a prima facie showing under section 300, subdivision (b). After six days in the hospital, Adrian was placed in a licensed foster home.

N.R. had frequent and lengthy supervised visits with Adrian. The visits were generally positive, although Agency social workers noted several instances when N.R. was inattentive to Adrian's feeding schedule. In conversations with Agency social workers, N.R. acknowledged she had put her own needs before Adrian's, but she expressed her desire to reunify with him. N.R. completed a parenting course and was referred to an individual therapist.

In advance of the jurisdiction and disposition hearing, the Agency recommended that the juvenile court make a true finding on the petition, that Adrian be removed from N.R.'s custody and remain in out-of-home care, and that N.R. receive reunification services. The Agency based its recommendation on the seriousness of Adrian's condition, his subsequent ability to gain weight with regular feedings, and N.R.'s inconsistency regarding feeding Adrian during visits. The Agency concluded, "Due to the seriousness of the allegations [N.R.] will need to demonstrate to the Agency and her

---

[2]     N.R. had been a dependent minor herself. At the time of the petition, N.R. was in an extended foster care program. N.R. had an older child, Omar R., who is not the subject of this dependency case. At the time of the petition, Omar was in good health and the Agency did not have any concerns regarding his care. N.R. gave birth to a third child in October 2015. The child died three days later.

4

safety network that she is able to follow up on baby Adrian's medical care and be able to identify his feedings and developmental schedule in order to move forward to unsupervised visits with the family."

At the hearing, the court received several Agency reports into evidence and a certificate of completion for N.R.'s parenting class. An Agency social worker testified that Adrian's dependency case was considered high-risk by the Agency based on Adrian's age and because he was "severely behind both socially, emotionally, motor skills and language." The social worker believed that Adrian would be at risk if he were placed with N.R. The social worker based her assessment of risk on Adrian's condition when he came to the attention of the Agency and the need for additional time to assess whether N.R. could adequately care for him. The social worker was concerned about N.R.'s attention to feeding Adrian during early supervised visits, but the social worker did not articulate any concern regarding later visits. The social worker also confirmed that the Agency had no concerns regarding N.R.'s parenting of Adrian's older brother Omar.

N.R. testified that that she understood Adrian had been detained by the Agency because she did not provide him with adequate food and care. N.R. said she had a plan to ensure that she cared for Adrian, including a journal with his feeding times and medical appointments. She was able to recite a proper feeding schedule and explained the importance of sufficient nutrition.

The Agency urged the court to follow its recommendations, including removal. Adrian's counsel joined in the Agency's position. N.R. submitted on the issue of jurisdiction, but she argued that the Agency had not met the standard for removal based

on N.R.'s demonstrated improvement. N.R. argued Adrian could be adequately protected in her care with the involvement of the Agency and other professionals.

The juvenile court found the allegations of the petition true, assumed jurisdiction over Adrian, and ordered Adrian's removal under section 361, subdivision (c)(1). The court explained that Adrian's condition at the outset of the dependency case was severe, readily apparent, and the result of long-term neglect. The court remarked, "During all this time the healthcare providers were making every effort to get [N.R.] on board, on helping them, and she provided them information that was either mistaken or not truthful and the child continued to suffer significantly." The court found persuasive Adrian's doctor's observations that his condition was "shocking" and that he should not be returned to N.R.'s care based on the serious risk to his health. After articulating the standard under section 361, subdivision (c)(1) of "a danger to the physical health or emotional well-being of the child," the court later stated that there was "clear and convincing evidence that removal of the child from [N.R.] is appropriate under . . . section 361[, subdivision] (c)(1) because of the danger to the emotional well-being of the child." In its minute order, the court wrote, "There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." The court ordered reunification services for N.R. N.R. appeals.

DISCUSSION

"After the juvenile court finds a child to be within its jurisdiction, the court must conduct a dispositional hearing. [Citation.] At the dispositional hearing, the court must decide where the child will live while under the court's supervision." (*In re N.M.* (2011) 197 Cal.App.4th 159, 169 (*N.M.*).) As relevant here, "[a] dependent child shall not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶] (1) [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c).) "[This] statute embodies 'an effort to shift the emphasis of the child dependency laws to maintaining children in their natural parent's homes where it was safe to do so.' " (*In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288.)

"A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances." (*N.M., supra*, 197 Cal.App.4th at pp. 169-170.) "Before the court issues a removal order, it must find the child's welfare requires removal because

7

of a substantial danger, or risk of danger, to the child's physical health if he or she is returned home, and there are no reasonable alternatives to protect the child. [Citation.] There must be clear and convincing evidence that removal is the only way to protect the child." (*Id.* at p. 170.)

We review the juvenile court's dispositional findings for substantial evidence. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 105.) " 'When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason.' " (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 (*Savannah M.*).) " 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' " (*Id.* at p. 1394.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133 (*T.V.*).)

The record here shows that Adrian was subjected to serious and prolonged neglect, bordering on starvation, while in N.R.'s care. N.R. failed to adequately feed him over the course of several months, missed at least two pediatric appointments, and resisted efforts by medical professionals to encourage proper care for Adrian. Adrian's condition at the

8

outset of the dependency case was "shocking," and his doctor recommended against placing him back in N.R.'s care because she believed "there is a serious risk to him." Adrian was a high-risk child based on his age, his developmental delays, his isolation with his caregivers (he was not school-aged), and his inability to speak on his own behalf. While N.R. recognized by the time of the jurisdiction and disposition hearing that she had neglected Adrian, and she had made some efforts to become a better parent, the juvenile court reasonably could find there would be a substantial danger to Adrian's physical health and well-being if he were returned home, notwithstanding N.R.'s positive efforts during the dependency case. Similarly, based on these facts and because N.R. had already resisted the efforts of medical professionals to protect Adrian while he was in her care, the court could reasonably find that there were no reasonable means short of removal by which Adrian's physical health could be protected.

N.R. argues the record did not contain evidence of "direct harm" and therefore the juvenile court's dispositional order was not supported by the evidence. N.R.'s focus on "direct harm" is misplaced. The statute requires a showing, by clear and convincing evidence, of a "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home" and of the necessity of removal as the only reasonable means by which the minor's physical health can be protected. (§ 361, subd. (c)(1).) "Direct harm" is not the standard. N.R. relies on *Savannah M., supra*, 131 Cal.App.4th 1387, but she misperceives its importance. *Savannah M.* considered whether the evidence supported a juvenile court's *jurisdictional* order under section 300. (*Savannah M.*, at p. 1394.) In that context, this court held that "

9

'the question under section 300 is whether circumstances at the time of the hearing subject the [child] to the defined risk of harm.' " (*Ibid.*, italics omitted.) The sufficiency of the evidence supporting a *dispositional* order was not at issue.[3]

N.R. points to the social worker's concern that more time was needed to assess N.R.'s protective capacities as a parent and to allow her to progress further in individual therapy. N.R. claims this evidence was insufficient to support a finding of substantial danger under section 361, subdivision (c). While the Agency's bare desire to have more time to assess a parent would likely be insufficient to support a finding of "substantial danger," the evidence here was not so limited. The record contained evidence of N.R.'s previous severe neglect of Adrian, her resistance to efforts by medical personnel to assist him, and her inconsistency regarding feeding and care of Adrian during early supervised visits. This evidence is sufficient to support the juvenile court's ruling for the reasons we have discussed. Similarly, while the Agency may not use removal as a "bargaining chip" to secure participation in services (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529-530), it may properly point to a parent's lack of participation or completion of services as

---

3     On reply, N.R. contends the juvenile court's reference to Adrian's "emotional well-being" during the hearing shows that there was insufficient evidence of a substantial danger to Adrian's physical well-being. (See *In re Isayah C.* (2004) 118 Cal.App.4th 684, 697-698 [danger to emotional well-being not sufficient]; but see *In re H.E.* (2008) 169 Cal.App.4th 710, 720-721.) We disagree. While the court mentioned "emotional well-being" in passing, its other comments show it was concerned primarily with Adrian's physical condition. In its minute order, the court correctly articulated the required finding under the statute. Under these circumstances, the record does not show the court misunderstood the requirements of the statute or failed to make a required finding. To the extent any error could be found the court's failure to use the word "physical" in one portion of its oral remarks, it was harmless. (See *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.)

evidence that the parent's previous history of abuse or neglect remains a concern. A parent's past conduct is relevant to the juvenile court's assessment of current danger. (*N.M., supra*, 197 Cal.App.4th at p. 170; see *T.V., supra*, 217 Cal.App.4th at p. 133 ["A parent's past conduct is a good predictor of future behavior."].)

N.R. claims "there is no indication the court considered less drastic measures" short of removal. We disagree. The focus of N.R.'s argument at the disposition hearing was the possibility that Adrian could be returned to N.R.'s care with additional protective measures to ensure Adrian's safety. The juvenile court considered and rejected these measures. For reasons we have already discussed, the juvenile court's decision is amply supported by the record. Although N.R. points to additional measures, the juvenile court reasonably could find that there were no reasonable means short of removal to protect Adrian given the current record. (See *In re D.C.* (2015) 243 Cal.App.4th 41, 56.)

N.R. points to other evidence in the record supporting her fitness as a parent, including her completion of a parenting class, her attendance at medical appointments, her knowledge of Adrian's pediatrician's name, her plan for organizing Adrian's appointments and feedings, her bond with Adrian, her successful visits, and Adrian's unexplained loss of weight in foster care. But, given our standard of review, we may not reweigh this evidence against the evidence supporting the juvenile court's order. The court's order was reasonable in light of the entire record, and we therefore may not disturb it on appeal.

DISPOSITION

The order is affirmed.

IRION, J.

WE CONCUR:

AARON, Acting P. J.

PRAGER, J.*

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.