Filed 10/10/13  In re A.B. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, | F066670 |
| Plaintiff and Respondent, | (Super. Ct. No. 516353) |
| v. | |
| D.B., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Levy, J. and Detjen, J.

D.B. (father) appeals from the termination of his parental rights to his daughter, A.B. (the child), at a Welfare and Institutions Code section 366.26[1] hearing. Father, who was incarcerated at the time of the child's detention, contends he received ineffective assistance of counsel at the combined jurisdictional and dispositional hearing based on his counsel's failure to raise section 361.2, which requires the court to place a child with a noncustodial parent if that parent requests custody, unless the court finds placement would be detrimental to the child. (See *In re Isayah C.* (2004) 118 Cal.App.4th 684, 700 (*Isayah C.*) [juvenile court may place child with incarcerated parent under section 361.2 if parent able to make appropriate arrangements for child's care].) We affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

A.B. (mother) gave birth to the child in December 2011. Mother, who had an extensive history of drug abuse and who had her parental rights terminated previously to three other children, admitted she used methamphetamine while pregnant with the child. Although the child was not "substance exposed" at birth, she was diagnosed with Down Syndrome.

On January 10, 2012, after spending less than a month with the child, father began serving a six-year prison sentence for possession of a firearm by a felon. Father's possession of a firearm violated his probation for a prior conviction of armed robbery.

In March 2012, mother was arrested on drug- and theft-related charges. She received a felony conviction and was sentenced to a 56-month jail term. She served 45 days and then was released on "house arrest" with an ankle bracelet.

On June 26, 2012, mother was arrested again and incarcerated. As a result, the child was placed in protective custody and the Stanislaus County Community Services Agency (agency) initiated the underlying dependency proceeding.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The agency's petition contained allegations that the child was at substantial risk of suffering serious physical harm as a result of her parents' inability to adequately protect her and provide adequate care due in particular to mother's substance abuse (§ 300, subd. (b)),[2] the parents were incarcerated and could not arrange for the care of the child (§ 300, subd. (g)), and the child's siblings had been neglected and there was a substantial risk that the child would likewise be neglected (§ 300, subd. (j)).

### Detention and Relative Placement

The day after the agency placed the child in protective custody, the paternal grandmother (grandmother) expressed a desire to have the child placed with her. The grandmother allegedly cared for the child when mother was previously in jail.

The grandmother lived with three other adults and two grandchildren in a two-bedroom apartment. The grandmother was directed to complete an application and have everyone in her home "live scan."

At a detention hearing on June 29, 2012, a superior court judge made temporary detention orders and directed the agency to investigate the grandmother for possible relative placement. The judge also continued the matter for a further detention hearing in early July 2012.

A social worker tried to obtain from the grandmother the names and background information of the other adults in her home, in time for the early July hearing. However, when the social worker contacted the grandmother, she stated the other adults were asleep at the time and she was unwilling to disturb them. The social worker explained she could

---

**2** The section 300, subdivision (b) count included one factual allegation against father. It was identical to the allegation included in the section 300, subdivision (g) count. Specifically, both counts alleged that father was incarcerated and sentenced to six years for a probation violation as a felon in possession of a weapon, his sentence began on January 10, 2012, and he was unavailable to meet the child's needs and did not appear to have made any arrangements prior to his incarceration.

not run a criminal background check on the other adults without the information, which in turn would delay possible placement with the grandmother. The grandmother said she understood.

Another superior court judge, who was normally not assigned to juvenile court, conducted the further detention hearing in early July. During an off-the-record discussion, the judge learned the matter was continued as a contested hearing for the social worker to "check out relative placement." Counsel for mother requested an additional continuance while county counsel for the agency objected. The judge continued the detention hearing to July 11 to allow the agency enough time to complete its assessment. The judge urged mother to communicate with relatives that they needed to be forthcoming with their information and cooperative with the agency.

Yet another superior court judge, whose regular assignment was in the juvenile court, conducted the July 11 hearing. She expressed concern that the posture of this case was strange in that the child was detained on June 26 and the matter was set and continued over for a contested detention hearing. In the judge's view, the case should be set for a jurisdictional hearing. County counsel on behalf of the agency agreed and explained the agency continued to assess relatives.[3]

Counsel for mother requested that the child be placed with the grandmother. He claimed the three other adults in the grandmother's home had been fingerprinted. There was no evidence before the court, however, that the grandmother's home had been cleared for placement.

The court confirmed the detention orders previously made in June 2012 and set the matter for a jurisdictional/dispositional hearing in August 2012.

---

**3** A paternal aunt also expressed an interest in placement. However, she apparently never completed the application that the agency forwarded to her.

Although the relatives living with the grandmother were cleared in mid-July, the social worker discovered the child's adult uncle lived next door to the grandmother and was in and out of her home. The living arrangements between the two apartments were described by the family as "fluid." As a result, the uncle needed to be fingerprinted before the grandmother could be approved for placement. However, he refused.

Consequently, on August 1, 2012, the agency denied the grandmother's placement request. The grandmother administratively challenged the denial, which was upheld in late August.

As of early September, the uncle completed the fingerprinting process, the results of which raised concerns and a history "that may or may not be exemptible." In the meantime, the agency placed the child in a "concurrent placement" and was not willing to reconsider placing the child with the grandmother.

### *Jurisdictional/Dispositional Hearing*

The agency recommended that the juvenile court sustain the petition, adjudge the child a dependent, remove her from parental custody, and deny the parents reunification services.

At the jurisdictional/dispositional hearing on September 12, 2012, father made an offer of proof as to what would be his testimony. One, he had a petition pending and was hopeful he would be released from custody within the next six months due to a sentencing error he believed the court made in his recent criminal case. Second, he had a bond with the child, and had taken steps to prepare for her arrival, including by preparing a nursery, obtaining baby supplies, and becoming educated regarding Down Syndrome. Third, once he was incarcerated, he made efforts to provide for the child, including by executing a power of attorney in an attempt to provide financially for her and to establish a legal guardianship with the grandmother. Father also requested placement of the child

5

with his mother or sister in the event the court rejected his request for reunification services.

During closing arguments, when county counsel began to address the issue of "any requests for placement of relatives," the juvenile court interjected:

> "I'll tell you right now, I'm not going to make any orders for direct placement. It is completely up to the Agency as far as an appropriate placement, unless one is able to show that the Agency has abused its discretion, but this Court is not going to make any orders for direct placement at this time."

Following the parties' closing arguments, the court exercised its dependency jurisdiction over the child pursuant to section 300, subdivisions (b), (g), and (j). Regarding father, the court remarked:

> "Unfortunately, the presumed father is also incarcerated. He also has a history of substance abuse as well as a conviction for a violent felony. His criminal record is concerning, although, he presents as a nice individual, and I am not saying he is not a nice individual, but, unfortunately, given the circumstances, the Court has no option but to find, based upon a preponderance of the evidence, that the petition is true."

The court made the requisite findings to remove the child from parental custody, including that reasonable efforts had been made to prevent or eliminate the need for removal. The court also denied the parents' reunification services under section 361.5, subdivision (b)(10) and (11), and subdivision (e)(1).

At a hearing on October 2, 2012, father's counsel again requested that the child be placed either with the grandmother or father's sister. The agency opposed the request and the juvenile court declined to address it, explaining "this Court is not supposed to get involved in the issue of placement unless one can—alleges that the Agency has abused its discretion with regard to placement decisions." The court then set a section 366.26 hearing to select and implement a permanent plan for the child.

6

Mother filed a petition seeking an extraordinary writ from the juvenile court's order denying reunification services and setting a section 366.26 hearing. This court denied mother's petition in an unpublished opinion filed in January 2013. (*A.B. v. Superior Court* (Jan. 11, 2013, F065883).) On our own motion, we take judicial notice of the court file and the unpublished opinion in the prior appeal, case No. F065883. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).) The above background information is based, in part, on the facts reflected in our prior opinion, which considered the same reports relevant to this case.

Father's counsel also filed a notice of intent to file a writ. However, counsel subsequently informed this court she would not be filing a writ petition. Consequently, this court issued an order granting father leave to personally file a writ petition. After no petition was filed, the action was dismissed as abandoned.

### Section 366.26 Hearing

On January 22, 2013, the agency filed a "366.26 WIC" report recommending that parental rights be terminated and a permanent plan of adoption be established for the child. The report noted that the child was currently placed in a foster home with a family who wished to adopt her and who was capable of meeting her special needs.

The section 366.26 hearing was held on February 1, 2013. Father made an offer of proof, similar to the one he made at the jurisdictional/dispositional hearing, namely that he was bonded with the child and he took steps to prepare for her arrival. Father also objected to termination of his parental rights. However, in the event the court freed the child for adoption, father requested she be placed for adoption with the grandmother or his sister.

After listening to closing arguments, the juvenile court terminated parental rights and ordered adoption as the child's permanent plan.

7

On February 14, 2013, father filed a notice of appeal from the February 1 order terminating parental rights.

## DISCUSSION

Father contends he received ineffective assistance from the outset of the case, the consequence of which was the termination of his parental rights. According to father, counsel should have argued that the section 300 allegations against him were unsustainable because he was able to show he could arrange for the care of the child through placement with the grandmother and he was not required to prove this arrangement was suitable; rather that burden belonged to the agency. (See *In re S.D.* (2002) 99 Cal.App.4th 1068, 1079 [nothing in section 300, subdivision (g) requires incarcerated parent to prove affirmatively the suitability of his or her caretaking arrangements].) Father acknowledges that "[s]ince there were allegations found true against mother, the court still would have had jurisdiction." However, he contends, "the court should have proceeded pursuant to section 361.2 as to him since he was a non-custodial parent and his counsel should have so argued." Father asserts his counsel could have had no possible tactical reasons for not making these arguments or for failing to request custody under section 361.2.

Preliminarily, we note father forfeited his claim of ineffective assistance of counsel by failing to raise it in a timely appeal or writ petition. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1160.) To overcome forfeiture, father argues he was denied due process. We disagree. However, even assuming father had not forfeited the issue, we would reject his claim on the merits.

Section 317.5, subdivision (a), provides "[a]ll parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel." In order to establish that his counsel in a dependency proceeding was ineffective, "a parent must demonstrate both that: (1) his appointed counsel failed to act in a manner expected of

8

reasonably competent attorneys acting as diligent advocates; and that (2) this failure made a determinative difference in the outcome, rendering the proceedings fundamentally unfair in that it is reasonably probable that but for such failure, a determination more favorable for [the parent's] interests would have resulted.' [Citations.]" (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98.)

"A court need not evaluate whether counsel's performance was deficient before examining prejudice suffered by defendant. [Citation.] Thus, a court may reject a claim if the party fails to demonstrate that but for trial counsel's failings, the result would have been more favorable to the defendant. [Citation.]" (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1180.)

Father's prejudice argument rests on the assertion that the juvenile court probably would have granted a timely request for custody under section 361.2. Assuming this statute applied in father's case, the record does not support this assertion.

Section 361.2, subdivision (a), provides:

> "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

"Among the factors in determining detriment are the noncustodial, incarcerated parent's ability to make appropriate arrangements for the care of the child and the length of that parent's incarceration." (*In re Noe F.* (2013) 213, Cal.App.4th 358, 368.) "At disposition, the length of a parent's incarceration may be a factor in determining detriment under sections 361, subdivision (c) and 361.2, subdivision (a), but a finding of detriment cannot be based solely on the fact a parent is incarcerated." (*Id.* at p. 369.)

9

There were numerous factors present in this case on which the court could have based a finding that it would be detrimental to place the child with father, including his serious criminal background and the length of his incarceration; i.e., six years. (Contrast *Isayah C.*, *supra*, 118 Cal.App.4th at p. 700 [father's plan to have child live with paternal relatives during father's "relatively short incarceration" was not "a sufficient showing of detriment under section 361.2[, subd.] (a)"].) At the jurisdictional/dispositional hearing in this case, the juvenile court specifically observed that father's "criminal record is concerning." The court noted that, in addition to his current incarceration, father had "a history of substance abuse as well as a conviction for a violent felony." The length of father's prison sentence and the court's express concerns about father's history of criminality and substance abuse cast doubt on his assertion that the court likely would have granted a request for custody under section 361.2.

More importantly, father is unable to show he could make suitable arrangements for the child's care during his incarceration as the agency would not approve the placement he sought. Although counsel did not specifically raise section 361.2, she made multiple requests for placement with the grandmother. However, the juvenile court repeatedly indicated it would not involve itself in the agency's placement decisions "unless one is able to show that the Agency has abused its discretion." While disagreeing with the agency's reasons for rejecting placement with the grandmother, father apparently has never argued or attempted to establish the agency abused its discretion.[4] Because

---

[4]     In light of the agency's reported concerns about the paternal uncle's fingerprinting results, we are doubtful father's counsel could convince the court the agency abused its discretion in disapproving the grandmother's request for placement of the child. On appeal, father complains "[t]here is nothing in the law that requires guests of a placement to Live Scan first." However, the record indicates the paternal uncle was more than a mere guest. As noted above, he lived next door to the grandmother, he was in and out of her apartment, and the family described the living arrangements between the two apartments as "fluid."

10

father has not demonstrated he was prejudiced by his counsel's failure to request custody under section 361.2, his ineffective assistance of counsel claim fails.

We also disagree with father's claim he was prejudiced by his counsel's failure to make the correct legal argument in challenging the section 300 allegations against him. His assertion that the challenged section 300 findings will result in his name being placed on the Child Abuse Central Index (CACI) is incorrect. It is the agency's duty, not the court's, to report known or suspected cases of child abuse to the Department of Justice. That duty is triggered by an investigator determining that it is more likely than not that child abuse or neglect occurred, not by the sustaining of a section 300 petition. (Pen. Code, § 11169, subd. (a).) The CACI referral process is strictly administrative in function and has no direct relationship with jurisdictional findings under section 300.

### *DISPOSITION*

The order terminating parental rights is affirmed.

11