Filed 7/13/15  In re Isaiah A. CA2/4
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ISAIAH A., a Person Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JESSICA R.,<br><br>        Defendant and Appellant. | B259438<br>(Los Angeles County<br>Super. Ct. No. DK02452) |

APPEAL from orders of the Superior Court of Los Angeles County, Steven Klaif, Juvenile Court Referee.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Appellant.

Appellant Jessica R. (Mother) appeals the juvenile court's jurisdictional order asserting jurisdiction over her infant son, Isaiah A., under Welfare and Institutions Code section 300, subdivision (b) based on Mother's substance abuse and the risk of detriment it posed to Isaiah.[1]  She also appeals the dispositional order removing Isaiah from her custody and requiring her to participate in a substance abuse program.  Mother contends substantial evidence did not support a finding that she abused drugs after her son's birth or that her use of drugs created a substantial risk of serious harm.  We conclude the orders were supported by substantial evidence and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Detention*

In October 2013, the Department of Children and Family Services (DCFS) received a referral indicating four-month old Isaiah was being neglected by Mother.  The caller stated Mother was using drugs and not properly supervising the child.  The caller described Isaiah as looking unhealthy and unclean, and said his hair was falling out in patches.

The caseworker contacted the maternal grandmother who said Mother and Isaiah had been living with her since his birth.[2]  Approximately three weeks earlier, Mother had taken Isaiah and moved out.  The grandmother was concerned because Mother had not taken any of the baby's things and had used marijuana around the

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    The grandmother said Mother often left Isaiah with her when she went out with friends, once staying out all night.  On other occasions, Mother stayed out overnight with the baby.  On one occasion, she and Isaiah were gone for three days.  When they returned, Isaiah smelled of marijuana and cigarettes and had severe diaper rash.

2

baby. The grandmother described Mother as having been "indifferent" to the child and nonresponsive to his crying. Mother was on probation at the time.[3]

DCFS obtained a removal order, detaining Isaiah from Mother. However, when the caseworker located the baby on November 13, 2013, he was residing with his father, Robert A. (Father), who reported Mother had left the baby with him seven weeks earlier. Father denied any current drug use, although he admitted having used marijuana daily in the recent past. As the home was found to be safe and clean, and there was no evidence that Father was neglecting or abusing Isaiah, Isaiah was not detained.[4]

Within a day of interviewing Father, the caseworker learned he had been arrested for murder, along with the brother with whom he was living. The paternal grandmother and step-grandfather had assumed custody of Isaiah per Father's request. Father was released within a day and all charges were dropped. However, he was dissuaded from picking up Isaiah. The paternal grandparents expressed concern that Father was using methamphetamine and would be unable to properly care for the baby.[5] They also expressed concern that the parents were not meeting the child's medical and developmental needs. Doctors present at Isaiah's birth had informed the parents that he seemed to be partially deaf, but the parents had never followed up to get his hearing tested.

---

[3] Mother's probation officer reported a warrant had issued for her arrest because she had not checked in for three months.

[4] At the time, Father was living with a maternal uncle, the uncle's wife, and the wife's brother.

[5] Interviewed later, both Mother and the maternal grandmother said Father was using drugs. Father agreed to drug test, but there is no indication in the record that he ever did.

On November 15, 2013, the caseworker finally was able to contact Mother, who denied use of drugs other than marijuana and claimed to have stopped using marijuana in November 2012. She explained she had left Isaiah with Father because she had become homeless after leaving the maternal grandmother's house. She told the caseworker she did not want to be "'an everyday mother,'" but wanted the maternal grandmother to be given custody of Isaiah.[6] Mother voluntarily agreed to drug test, but missed two scheduled tests in November.[7]

On November 25, 3013, the court ordered Isaiah detained from both parents and vested custody with DCFS. DCFS left Isaiah with the paternal grandparents.[8]

B. *Jurisdiction*

Father was interviewed for the jurisdiction/disposition report at Men's Central Jail.[9] He stated Mother had stayed for a time in a "known drug house," and would go out to "drink[,] . . . hang out, [and] text," leaving the baby with the maternal grandmother. Father said Mother had not taken good care of Isaiah, as the child developed bad diaper rash and smelled unbathed when Mother had

---

[6]     DCFS was unable to consider placing Isaiah with the maternal grandmother without obtaining a waiver due to her criminal history and history with child welfare.

[7]     Mother later claimed to have arrived too late to test on the first occasion and to have been sent away on the second occasion because the center did not have her paperwork. Mother also failed to appear for three scheduled tests in January and February 2014.

[8]     In April 2014, Isaiah was placed with a maternal uncle. In July 2014, he was placed with the maternal grandmother.

[9]     Father claimed to have been detained for violating probation. The caseworker received other reports indicating the incarceration was based on new criminal activity. Father was released on June 30, 2014. After his release, he did not appear at any further hearings. He is not a party to this appeal.

4

custody.[10] The paternal grandmother said Mother used marijuana and methamphetamine, and that she had seen Mother in the park with Isaiah "getting high." She also reported seeing a picture of Mother on Facebook with drug paraphernalia. The maternal grandmother, contradicting her earlier statements, said she had never seen Mother use drugs or appear to be under the influence; she denied that Mother had been indifferent or neglectful toward the baby, claiming to have been misunderstood when she previously stated otherwise. Aurora said she had seen Mother smoking marijuana and getting high. Aurora also said Mother generally waited for someone else to care for the baby when, for example, his diaper needed changing.

In February 2014, Mother was arrested for assault with a deadly weapon. The caseworker interviewed Mother during her incarceration and in an April 2014 last-minute information for the court, reported that Mother said she started smoking marijuana after losing custody of Isaiah but denied having used marijuana around him. Mother also said Father smoked marijuana and methamphetamine, and that she was aware of Father's drug use when she left Isaiah with him.[11] Prior to the jurisdictional hearing, Mother was sentenced to three years imprisonment.

The jurisdictional hearing took place over multiple days in June and August 2014. The parties stipulated that if called to testify, Mother would say she last

[10]    Father admitted using marijuana when he had custody of Isaiah and using methamphetamine as recently as March 2013. Aurora R., the mother of the paternal uncle's girlfriend with whom Father and Isaiah had lived, described taking the baby from Father once because she noticed he was high.

[11]    Mother described a specific occasion when she had observed Father "tweaked and high" during the period he had care and custody of Isaiah. At the time she made this observation, Mother did not know where Isaiah was and made no effort to ensure he was safe.

used marijuana when she was under 18.[12] The maternal grandmother testified that her previous statements concerning Mother's drug use were based on hearsay, not personal observation. She denied ever saying Mother was indifferent to Isaiah or inattentive to his needs. The paternal grandmother testified she had seen Mother only once after Isaiah was born. She denied having seen Mother at a park with the baby getting high. But she confirmed having seen a picture of Mother on Facebook holding a glass pipe near her mouth.

The court found true that Mother "has a history of illicit drug use and is a current user of marijuana, which renders [her] incapable of providing regular care for the child." It found true that Father "is a current user of marijuana and has a history of meth[amphetamine] use, which renders [him] incapable of providing regular care for the child," and that Father "abused illicit substances while the child was under his care and supervision" in October 2013. The court further found the substance abuse by Mother and Father "endanger[ed] the child's physical health and safety and place[d] the child at risk of physical harm, damage and danger." At the hearing, the court explained it had no qualms about dismissing a petition if there was no proof of a nexus between parental drug use and neglect or abuse of the child. The court pointed out that multiple witnesses had said Mother and Father both used drugs and neglected the baby, and that Isaiah was "not a 13-year-old child that's going to school, being otherwise well taken care of . . . having all of [his] needs provided for by the parents." The court concluded that "[t]he age of the child," the parents' drug use "as reported by a number of people," and the

---

[12]    Mother would have turned 18 in January 2011. The parties also stipulated that if Father were called to testify, he would say he was not currently using marijuana or any other drug and did not use illegal substances during the period Isaiah was in his care and custody.

6

evidence of "inadequate caring [of] the baby" provided the nexus required to support jurisdiction under section 300, subdivision (b).

DCFS and counsel for the children urged the court to provide no reunification services for Mother due to the length of her sentence. The court granted reunification services, ordering Mother to participate in a drug abuse treatment program.[13] Mother appealed.

## DISCUSSION

A. *Jurisdictional Issues*

Mother contends the court's finding that she had a history of drug use and was a user of marijuana was not supported by substantial evidence and even if true, did not support a finding that Isaiah was at risk of harm. For the reasons discussed, we disagree.[14]

The juvenile court may properly assert jurisdiction over a minor child under section 300, subdivision (b) where "[t]he child has suffered or there is a substantial

---

[13] Mother had completed a parenting program while incarcerated.

[14] Respondent contends we need not address the issues raised by Mother because the juvenile court's assertion of jurisdiction would be supported by the finding sustained as to Father's substance abuse, which Mother does not challenge. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [when dependency petition alleges multiple grounds for assertion that minor comes within dependency court's jurisdiction, reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the enumerated bases for jurisdiction is supported by substantial evidence].) Appellate courts generally exercise discretion to reach the merits of a challenge to a jurisdictional finding where, as here, it "(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citation] . . . ." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) Even where, as here, the appellant was a noncustodial parent at the time of DCFS's intervention, the jurisdictional finding is ordinarily reviewed due to its negative impact on a request for custody under section 361.2. (*In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1317.)

risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse." The juvenile court's jurisdictional finding must be supported by a preponderance of the evidence. (*In re Christopher M.*, *supra*, 228 Cal.App.4th at p. 1318.) We review the juvenile court's jurisdictional findings for substantial evidence, considering the evidence in the light most favorable to the findings and drawing all reasonable inferences in support of such findings. (*Ibid.*; *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 763.)

Substantial evidence supported the court's findings that Mother abused drugs and that her substance abuse posed a substantial risk of danger to Isaiah. Mother admitted she smoked marijuana. She missed multiple drug tests, which the court could reasonably conclude would have been dirty. Although she claimed on one occasion to have quit using marijuana in November 2012 and on another not to have used it after turning 18 in January 2011, in April 2014, she told the caseworker she had used very recently, after losing custody of Isaiah. The maternal and paternal grandmothers reported to the caseworker that she used marijuana while caring for Isaiah. The court was not required to credit the grandparents' later claims to have been misunderstood or Mother's claim to have stopped using marijuana a year or more prior to DCFS's intervention.

Of course, to establish jurisdiction, DCSF must do more than prove that the parent used an illicit drug or inebriating substance. There must also be evidence that the substance abuse created a specific, nonspeculative, substantial risk of

8

serious physical harm to the child. (*In re Drake M.*, *supra*, 211 Cal.App.4th at pp. 763-765; *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 725; *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1344-1346; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003.) In determining risk, the age of the child involved is a significant factor, and assertion of jurisdiction is justified where the child of the substance abusing parents is "of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] physical health and safety." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824; accord, *In re Drake M.*, *supra*, at p. 767.) Indeed, for such a child, "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M.*, *supra*, at p. 767; accord, *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219.)

Here, a prima facie case of risk was established by Mother's drug use and Isaiah's age. In addition, the record is replete with evidence demonstrating Mother's neglect of Isaiah. The maternal grandmother told the caseworker that during the baby's early months of life, Mother was indifferent to him and did not respond to his crying. The grandmother also said that when he was only a few months old, Mother kept him out for days at a time or left him with the grandmother while she went out for lengthy periods. Father said when the baby was in Mother's care, he developed bad diaper rash and smelled as if he were not being bathed. Aurora said Mother would wait for someone else to step in when the baby needed care. The paternal grandparents reported Mother failed to follow up on the doctor's warning that Isaiah appeared to be partially deaf. Mother herself admitted that she left the baby with Father although she knew he abused marijuana and methamphetamine. After she dropped Isaiah off with Father, she made no effort to ensure he was safe, even on the occasion she observed Father "tweaked

9

and high." The court could reasonably attribute Mother's neglect and poor decisionmaking to her substance abuse and reasonably conclude from the evidence presented that Mother's drug use created a substantial risk of serious harm to the infant.

B. *Dispositional Issues*

Section 361, subdivision (c)(1) provides that a juvenile court may not take a dependent child from the physical custody of his or her parents unless the juvenile court finds clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." Section 361.2, subdivision (a) provides that "[w]hen a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child." If there is and if that parent requests custody, "the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) Appellate courts have interpreted these provisions to require juvenile courts to allow nonoffending incarcerated parents to claim or retain custody of children neglected or abused by the other parent, provided they can make appropriate arrangements for the care of the child. (*In re A.A.* (2012) 203 Cal.App.4th 597, 606; *In re V.F.* (2007) 157 Cal.App.4th 962, 965-966; *In re Isayah C.* (2004) 118 Cal.App.4th 684, 695-701.)

10

Here, Mother rests her claim of being a nonoffending parent, entitled to have her custodial arrangements respected despite her incarceration, on the contention that substantial evidence did not support the court's jurisdictional findings. As discussed above, we conclude otherwise.

Finally, Mother contends the court's requirement that she participate in a substance abuse program as part of the reunification program was unwarranted. Again, she relies on her contention that substantial evidence did not support the court's jurisdictional findings that she used drugs and that such drug use created a substantial risk of harm to her son. Because we find substantial evidence supported these findings, we affirm the court's dispositional order.

## DISPOSITION

The court's jurisdictional and dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

11