Filed 7/30/21  In re J.T. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | B308231 <br><br> (Los Angeles County Super. Ct. No. 20CCJP02550A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>    Plaintiff and Respondent, <br><br> v. <br><br> E.T., <br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Affirmed in part, reversed in part, and remanded.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court removed J.T. (Minor) from the custody of her mother D.G. (Mother) based on evidence Mother used amphetamine or methamphetamine while pregnant with Minor's younger half-sibling, L.C. E.T. (Father) was Minor's noncustodial parent and the Department of Children and Family Services' dependency petition (the Department's) did not allege he had done anything to warrant court jurisdiction over Minor. Father asked the juvenile court to give him custody of Minor if it sustained the jurisdiction allegations against Mother, but the juvenile court denied his request based on a finding that placing Minor with Father would be detrimental to her physical or emotional well-being because Father drank multiple beers on occasion, lacked a close relationship with Minor, and lived in a converted garage with limited sleeping areas. We consider whether there is substantial evidence supporting the juvenile court's finding, which must be made by clear and convincing evidence, that placing Minor with Father would be detrimental.

## I. BACKGROUND

### A. *The Department's Investigation*

The Department began its investigation when Minor was four years old; Mother had just given birth to Minor's half-sibling, L.C., in April 2020. The Department received a referral from hospital personnel alleging Mother admitted using amphetamine during her pregnancy, specifically between November 2019 and February 2020. Mother tested negative for amphetamine at the time of L.C.'s delivery, however.

A Department social worker interviewed Mother a few days after L.C.'s birth. Mother acknowledged she used methamphetamine for approximately four months while

3

pregnant with L.C.  She asserted, however, that she had been sober for two months and did not consider herself an addict.  Mother was unable to give the social worker information about Minor's last physical examination or provide her immunization records, stating she had fallen behind on everything and her Medi-Cal benefits had stopped.

Minor was away visiting a family member during the social worker's first visit with Mother, so the social worker returned to interview Minor the following day.  She was shy, and had limited speech abilities, and the social worker could not engage her in conversation.  The social worker did observe, though, that Minor appeared well-dressed and there were no signs of abuse or neglect.  Mother identified Father as Minor's biological father, stated they had ended their relationship years prior and his whereabouts were unknown, and said Father had no contact with Minor in the past.

Mother's boyfriend and L.C.'s father, J.A., told the social worker that Mother had used methamphetamine once during pregnancy and agreed she should enroll in a substance abuse program.  He also said he considered L.C. and Minor to be his own children.  He acknowledged Minor had a biological father, but he maintained he was the children's provider and was the only one looking out for Minor.

J.A. and Mother submitted to on-demand drug testing.  Mother's results were negative, but J.A. tested positive for marijuana.  The Department obtained a removal order and removed Minor and L.C. from Mother's custody.

*B.     The Petition and Detention Hearing*

The Department filed a two-count dependency petition in May 2020.  Count b-1 alleged Mother has a history of substance abuse and was a current user of amphetamine and methamphetamine, which renders her incapable of providing regular care for both Minor and L.C.  It further alleged Mother tested positive for amphetamine while pregnant with L.C. and Mother had previously been under the influence of amphetamine and methamphetamine while Minor was in Mother's care.[1]  The petition listed Father as Minor's father but did not include any adverse allegations against him.

The Department filed a detention report that stated Father's absence and lack of involvement with Minor significantly endangered Minor's physical and emotional health and well-being.  It also noted the Department was unable to locate and interview Father prior to the filing of the report.

At the detention hearing, the juvenile court ordered Minor detained and directed the Department to suitably place her pending further dependency proceedings.  The court found Father was Minor's presumed father, was a noncustodial parent, and it would be detrimental to release Minor to him at the time because his whereabouts were unknown.  The court ordered Father to have monitored visitation with Minor after contact with the Department.

---

[1]     Count b-2, pertaining to L.C. only, alleged L.C.'s father has a history of substance abuse and is a current user of marijuana, interfering with his ability to provide regular care and supervision of L.C.

5

*C.  Subsequent Events*

    *1.  Interviews of Minor, Mother, and Maternal Aunt*

A Department social worker attempted to interview Minor in July 2020.  Minor was unable to speak in full sentences and would respond to questions with one-word answers.  When asked about her father, Minor said "'mi papa' (my father)."  When asked if she has seen him, Minor stated "'fono' (telephone)."  When asked if she had seen Father on the telephone (via video chat) Minor nodded yes.  When asked if she enjoyed seeing Father, she also nodded yes.

Mother was interviewed again.  As pertinent for our purposes, Mother said that during her relationship with Father they argued about Father's jealousy issues.  Mother also stated Father once pulled her hair while she sat in the back seat of his car, with Minor present.  She said she did not report this incident to law enforcement.

Karla O. (Maternal Aunt) was also interviewed.  She denied knowing about Mother's drug use.  Regarding Father, Maternal Aunt said he had not been consistently involved in Minor's life.  She stated he did not always provide Minor with basic necessities and the last contact she knew of between Father and Minor occurred two years earlier.  Maternal Aunt stated Father had a history of alcohol use during her interactions with him two to three years prior to the dependency proceedings, and he often drank alcohol to the point of intoxication.  Maternal Aunt did not know, however, if Father presently had any alcohol issues.

## 2. *Initial interview with Father*

The Department initiated a due diligence search for Father in early June 2020. He was located that same month and later interviewed by a Department social worker.

Father has two other children from previous relationships: thirteen-year-old Ja.T. and ten-year-old C.T. Father maintains phone contact with Ja.T., who was living in New York with her mother. Father visits with C.T. every other weekend. Father asserted Mother had cut him off from Minor's life and said he wanted to obtain custody of Minor.

The social worker asked Father about Mother's substance abuse issues. Father stated Mother had not exhibited any behaviors that led him to believe she was using drugs and he did not suspect she was using when they were in a relationship. At some point after Father and Mother broke up, one of Mother's aunts told Father that Mother was neglecting Minor. When asked how Mother was neglecting Minor, Father said he didn't know, but he had been told Mother was leaving Minor with relatives. When asked what Father did to protect Minor knowing family members were concerned about Mother neglecting her, Father stated he did nothing because he did not want to complicate things with Mother.

When asked about his own substance use, Father denied using drugs. Father admitted he occasionally drinks alcohol socially. When he does so, he may drink four to six beers over the span of a few hours. The last time he consumed alcohol was a few days prior to the interview, when he was socializing with a neighbor. Father denied feeling intoxicated after drinking four to six beers, stated he only drinks when he is home, and denied ever driving while intoxicated.

### 3.     *Father's visits with Minor*

During his conversations with the Department, Father expressed a desire to visit with Minor and understood the visits must be monitored.  Father had a video chat visit with Minor in mid-July.  Minor recognized Father and called him "papa."  Father also had a 30-40 minute in-person visit with Minor a few days later, at a local McDonald's.  Minor's foster mother reported no concerns with Father's visit.

### 4.     *Interviews of others who know Father*

A Department social worker interviewed Father's wife, C.L. (C.L.).  By that time, she had been in a relationship with Father for two years and married to Father for nine months.  They do not have any children together, C.L. she has a five-year-old son from a previous relationship whom they raise together.  C.L. said Father drinks on occasion and will have about six beers when he does.  She denied observing any belligerent behavior when Father drinks.  C.L. does not have a problem with Father's occasional alcohol use because it does not affect his ability to function as a parent, spouse, and provider.  C.L. reported Father had been responsible in caring for his children and had been involved in Minor's life until September 2019, when Mother stopped communicating with Father.  C.L. also told the social worker there had never been any domestic violence between her and Father.

The Department social worker also interviewed L.R. (L.R.), the mother of Father's ten-year-old child, C.T.  L.R. said Father has always been involved in C.T.'s life, has always provided financial and emotional support, and has been a good father to C.T.  She was aware Father drinks occasionally but did not

believe he drinks to the point of intoxication. She reported C.T. was regularly happy when returning from visits with Father and did not express any concerns about Father being neglectful. L.R. stated her relationship with Father ended because of their lifestyle differences, but they maintain a good relationship and are able to arrange visits between Father and C.T. without issues. L.R. denied any domestic violence occurred during her relationship with Father.

     5.     *The Department's assessment of Father's home*

The Department assessed Father's home, a converted garage unit. Father and C.L. currently occupy the bedroom, but if Father were granted custody of Minor he would purchase twin beds for Minor and his stepson and allow them to share the bedroom while Father and C.L. shared the living room. The social worker did not observe any safety issues in the home, but informed Father the backyard was a hazard because it was dirty and there were tools around that could be dangerous to a child.

Father and C.L. agreed that if Minor were released to his care, C.L. would stop working and care for Minor while Father works. C.L. stated not working would also allow her to spend more time with her son.

     D.     *The Jurisdiction and Disposition Hearing*

In advance of the jurisdiction hearing, the juvenile court gave the Department the discretion to place Minor with Father. A last minute information report submitted in advance of the hearing stated Minor had her first unmonitored visit with Father. The visit, which lasted an hour, took place in a local park. The information further stated the Department continued

to assess the relationship between Father and Minor because they had not visited for several months prior to the Department's involvement.

After several continuances, the juvenile court held the adjudication hearing in late September 2020. The court sustained the petition in its entirety and declared Minor a dependent of the court under section 300, subdivision (b). As to the custody and placement of Minor, Minor's attorney asked the court to leave Minor in her foster care placement. Minor's counsel was concerned about placement with Father in light of evidence he would drink about six beers at a time, Maternal Aunt's statement that he used to drink to the point of intoxication, the absence of a strong bond or connection between Father and Minor, and Father's failure to provide Minor with basic necessities in the past. Mother similarly objected to Minor being released to Father and added that placing Minor with Father might prevent Mother from reunifying with the child.

Father asked the juvenile court to give him custody of Minor. Father noted he was currently having unmonitored visits with Minor. He also addressed concerns the juvenile court had articulated (off the record) regarding the space that would be available for Minor in Father's home. Father represented every child would have their own bed if Minor were released to him, and there is an additional sofa bed where his Minor's half-sibling, C.T., could sleep on the weekends she visits Father. Regarding his alcohol consumption, Father noted that when he consumes six beers, he does so over the course of several hours on social occasions.

Counsel for the Department requested the court make a finding that placing Minor with Father would be detrimental to

her. Counsel noted there had only been one unmonitored visit with Father and argued there was a detriment to Minor because she was a four-year-old of tender age and did not have a significant bond with Father for the court to "just" release her because Father is Minor's presumed biological father.

The court stated it was finding by clear and convincing evidence that there would be a substantial danger to Minor if she were returned to Mother and there were no reasonable means short of removal for protecting her. The court then further found it would be detrimental to place Minor with Father.

The court opined that drinking a six pack of beer over several hours is not minimal use but would be called binging in Alcoholics Anonymous terms. The court stated that Father's binging from time to time is no less problematic than if he were drinking every day and stated his drinking presented some problems for the court. The court further stated it assumed Father would stop drinking a six pack of beer on one occasion, stating it did not think a court could safely place a child with a parent who is drinking that amount of liquor at one time. The court did not care if the consumption occurred over several hours, stating Minor might have an emergency and need to be taken to the emergency room and Father would not be in a position to drive.

The court acknowledged, however, that Father was developing a relationship with Minor. The court recognized this was important and ordered continuing unmonitored visits in a neutral location. The court stated it would like Father to have an overnight visit after several unmonitored visits. The court also wanted a commitment from Father that he would not drink in

Minor's presence and a Department reassessment of the suitability of Father's home for multiple children.

The juvenile court also expressed concern that Minor had already suffered from her removal from Mother and did not want to see that happen again.  In the court's words, it was unwilling to "gamble" on placing Minor with Father given the potential for alcohol abuse and what the court described as another childhood adverse experience.

## II.  DISCUSSION

The juvenile court erred in declining to place Minor with Father.  There is no substantial evidence that placing Minor with Father would be detrimental to her safety, protection, or physical or emotional well-being.  The concerns cited by the court in issuing its findings were speculative, unsupported by evidence, and insufficient to support a detriment finding.

### A.    *Governing Law*

Welfare and Institutions Code section 361.2, subdivision (a) provides:  "If a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child.  If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."  (§ 361.2, subd. (a).)  Welfare and Institutions Code section 361.2, subdivision (a) evidences "the Legislative preference for placement with [the nonoffending

noncustodial] parent." (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1132.)

A juvenile court declining to place a child with a nonoffending parent must make the detriment finding by clear and convincing evidence. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426 (*Luke M.*); *In re Isayah C.* (2004) 118 Cal.App.4th 684, 700.) The party opposing the child's placement with a noncustodial parent bears the burden of proving the placement would be detrimental. (*In re K.B.* (2015) 239 Cal.App.4th 972, 979 (*K.B.*).) On appeal, "[w]e review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the children would suffer such detriment. [Citations.]" (*Luke M.*, *supra*, at 1426; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

### B. *Substantial Evidence Does Not Support the Detriment Finding*

The juvenile court's detriment finding rests on three given reasons: (1) Father's alcohol use; (2) Father's lack of a robust prior relationship with Minor; and (3) Father's living situation. None is supported by substantial evidence.

First, an unsubstantiated claim of alcohol abuse does not constitute substantial evidence of detriment. (See *In re C.M.* (2014) 232 Cal.App.4th 1394, 1403-1404 (*C.M.*); *In re Abram L.* (2013) 219 Cal.App.4th 452, 463 [dismissing concerns that a father "'appeared to have an unresolved problem with alcohol and a history of substance abuse'" where alcohol abuse allegations in the dependency petition were dismissed and the father passed the only drug and alcohol test he was given].) The only evidence

13

indicating Father's drinking even rose to the level of intoxication, much less alcohol abuse, was a statement from Maternal Aunt describing Father's behavior from two or three years prior.[2] It did not serve as evidence of Father's behavior at the time of the dependency proceeding—indeed, Maternal Aunt admitted she was unaware if Father presently had a drinking problem. There was also contemporary and strong countervailing evidence: Father's wife confirmed his drinking does not impact his ability to function as a parent, spouse, or provider, and the mother of Father's ten-year-old child stated Father drinks occasionally but did not believe he drinks to the point of intoxication. The record, considered in its entirety, thus contains no evidence Father's occasional drinking would impair his ability to care for Minor.

The juvenile court also referenced Father's lack of a close relationship with Minor in reaching its detriment finding. However, a "lack of contact between the child and the nonoffending noncustodial parent, alone, is not a basis for finding detriment." (*K.B.*, *supra*, 239 Cal.App.4th at 980-981.) Here, Minor's limited relationship with Father did not constitute substantial evidence of detriment. It was undisputed that Father held himself out as Minor's father. Though he had not been involved in Minor's life in the year or two before he was informed

---

[2]    It is possible the juvenile court's concern with Father's drinking stemmed from the court's opinion that drinking four to six beers (without knowing their alcohol content) over a few hours (without knowing how many hours) amounted to binge drinking in Alcoholics Anonymous terms (without citing any such definition). Such an opinion does not rest on sufficient facts in the record.

14

of the dependency proceedings, the available evidence in the record reflects this was due to Mother's decision to cut him out of Minor's life, not a lack of interest on his part.[3] And even with limited contact, Minor still recognized Father as her father.

In arguing to the contrary, the Department references Father's minimal contacts with Minor after the Department's involvement. However, there is no evidence in the record that Father declined or missed opportunities to visit with Minor during the dependency proceedings. Nor does it establish the three visits specifically referenced in the Department's reports were in fact the only visits between Father and Minor. The record instead only indicates Father expressed a desire to visit with Minor, Father visited with her, and neither her foster mother nor the Department expressed concerns about the visits. Given the foregoing, "the alleged lack of an established relationship with father[] was [not] sufficient to constitute substantial evidence of the high level of detriment required under section 361.2[, subdivision] (a)]." (*C.M.*, *supra*, 232 Cal.App.4th at 1403.)

The juvenile court also relied on Father's living situation in finding detriment. However, the court did not cite any safety concerns in its discussion.[4] Rather, the court took issue with the

---

[3] Maternal Aunt's statements that Father had not consistently been involved in Minor's life, and had not always provided her basic life necessities, does not establish those omissions were due to any choice Father made.

[4] Indeed, the Department had found no safety concerns within the home itself, though it had noted the backyard was a

plan to have four-year-old Minor and her five-year-old stepbrother share a room, noting the plan might be fine for the time being but the court would prefer separate rooms for the children of different sexes, or at least a partition between them, in a year or so.[5] While the proposed sleeping arrangements may not have comported with the court's ideal vision of a child's room, that does not suffice to establish a detriment. (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1505 [the fact a home is not ideal is not sufficient to establish detriment].) Neither the court nor the Department identified any genuine issues with the sleeping arrangements.

In its briefing on appeal, the Department advances several additional arguments, not relied on by the juvenile court, that it believes would support the court's detriment finding. The record lacks substantial evidence supporting these reasons too.

First, the Department argues Father's prior failure to make active efforts to ensure Minor's well-being indicated he would not have been invested in her care if she was placed in his physical custody. The Department posits that because Father did not previously seek custody of Minor or fight Mother's decision to cut him out of Minor's life, he would have difficulty meeting Minor's needs for regular medical appointments, speech therapy, and educational needs. This, however, is conjecture. Father's prior

---

hazard because it was dirty and there were tools around that could potentially be a hazard.

[5]     The court's discussion also seems to reflect a belief that Father's ten-year-old daughter would be living in the room on a regular basis, rather than staying at the home every other weekend.

16

unwillingness to fight Mother's decision to prevent him from maintaining a presence in Minor's life does not detract from Father's stated desire to care for Minor or indicate he is unable to do so (especially given the assistance his wife intended to provide).

Next, the Department argues Minor did not indicate she wished to live with Father. As the Department acknowledges, a Minor's wishes are not dispositive. (*C.M.*, *supra*, 232 Cal.App.4th at 1403-1404.) Moreover, Minor also did not indicate she did *not* want to live with Father, or that she did want to live with anyone else. That Minor did not affirmatively indicate a desire to live with Father does not establish a detriment.

The Department also argues it was reasonable for Mother to be concerned about Father's potential interference with her desire to reunify with Minor. It supports that assertion by referring to the conflicting descriptions Mother and Father provided regarding the reason their relationship ended, and by referring to Mother's unsubstantiated report that Father had pulled Mother's hair once while the two were in a relationship. The record contains no other indications of domestic violence, and Mother did not report the incident. The Department makes no effort to explain how these factors support a conclusion that placing Minor with Father would be detrimental to Minor's safety, protection, or physical or emotional well-being.

Finally, the Department argues the juvenile court reasonably determined Minor would suffer detriment if placed in Father's custody based on the "totality of the factors." But the totality of nothing is still nothing. Substantial evidence supporting a detriment finding does not exist here.

17

## DISPOSITION

The juvenile court's disposition order is reversed and the matter is remanded to the juvenile court to enter a new disposition order giving custody of Minor to Father—unless the juvenile court makes a finding on the record, based on evidence not before this court in this appeal, that changed circumstances render the issue moot or would justify a detriment finding by clear and convincing evidence. In all other respects, the jurisdiction finding and disposition order are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.

18