Filed 11/16/23  In re E.G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.G., a Person Coming Under the Juvenile Court Law. | |
| | D082348 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4842) |
| v. | |
| I.G. et al., | |
| Defendants and Appellants. | |

APPEALS from an order of the Superior Court of San Diego County, Mark T. Cumba, Judge.  Affirmed.

Marisa L. Dersey Conroy, under appointment by the Court of Appeal, for Defendant and Appellant, I.G.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant, M.S.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

I.G. (Mother) and M.S. (Father) both appeal from the juvenile court's disposition order removing their three-year-old-son E.G. (Child)[1] from their custody pursuant to Welfare and Institutions Code[2] section 361, subdivision (c). They contend that the removal of the Child from Mother's physical custody was not supported by substantial evidence and there were other reasonable means of protecting the Child. We reject these claims and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father began dating in 2016, and the Child was born in 2019. Their on-again, off-again relationship has involved a pattern of domestic violence both before and after the birth of their Child. Both Mother and Father were perpetrators of the violence, which occurred in the Child's presence and, on one occasion, resulted in his physical injury.

The parents' pattern of domestic violence resulted in five referrals to Child Welfare Services (CWS) within three years, over 25 calls to law

---

[1]     The minor child's surname and/or last initial are inconsistent within the record on appeal and among the parties' briefs.

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

enforcement, multiple police reports, four temporary restraining orders,[3] a criminal protective order,[4] and six arrests.[5]

The first CWS referral in March 2020 (for general neglect, emotional abuse, and physical abuse) resulted from an argument that escalated into the use of physical force.  Father pushed Mother down while she was holding the Child, and the Child suffered a bruise to the forehead.  Father was arrested, and CWS created a safety plan.  Mother subsequently obtained a temporary restraining order against Father, but just eight days later, Father violated the order by attempting to break into the home.

The second referral in October 2021 (for general neglect and emotional abuse) stemmed from another domestic violence incident between the parents while the Child was present.  This time, Mother claimed Father was verbally attacking her while she was breastfeeding the Child.  She responded by kicking Father in the head.  The Child was not physically injured, but Mother was arrested.

To address the repeated domestic violence concerns, the San Diego County Health and Human Services Agency (Agency) offered voluntary services to Mother and Father from December 13, 2021 through August 24,

---

[3]     Mother filed temporary restraining orders against Father on April 1, 2020, November 1, 2022, and May 23, 2023.  On November 4, 2022, Father filed a temporary restraining order against Mother.

[4]     A criminal protective order was entered on June 7, 2022 protecting Mother and Child from Father.  The Order was revised on August 11, 2022 to only protect Mother from Father and remains in effect.

[5]     Father was arrested four times (March 25, 2020, May 21, 2022, October 21, 2022, and March 1, 2023).  Mother was arrested twice (October 29, 2021 and April 10, 2022).

2022.  Mother engaged in parenting classes and met with a domestic violence clinician but did not participate in the domestic violence victim program to which she was referred.  Father did not meet with a domestic violence clinician and did not complete the other programs or services to which he was referred.

While the voluntary case was ongoing, the parents continued to engage in combative conduct in the presence of the Child, resulting in two more domestic violence referrals.  The first of these was for emotional abuse stemming from an incident on April 10, 2022, after the parents took the Child to Sea World.  Mother and Father started arguing on the drive back and pulled over to continue their argument outside the vehicle.  Mother allegedly slapped the Father, got back in the car, and drove off without him.  Father contacted law enforcement and Mother was arrested.  The next referral was for general neglect and emotional abuse after Father, who had been drinking, broke into Mother's home through the back window of the Child's room on May 21, 2022.  Earlier that day, the parents had an argument during a visit to Otay Lakes after which Mother went home with the Child.  Father was arrested.[6]  After Mother obtained a temporary restraining order, the court issued a criminal protective order protecting the Child and the Mother from Father.  The court later amended the criminal protective order to only protect the Mother.  As amended, the order remains in effect.

While the criminal protective order was in effect, Mother continued to have direct contact with Father and even allowed him to live in her home

---

[6]     Father pled guilty in the associated criminal case.  He was sentenced to summary probation and mandated to attend a 52-week domestic violence perpetrator program but failed to participate.

4

with the Child.[7]  On March 1, 2023, yet another argument between Mother and Father escalated into a serious domestic violence incident that resulted in the most recent referral and the child being taken into protective custody. Their argument escalated to a physical altercation when Father accused Mother of infidelity.  He grabbed her by the hair, slammed her body onto the ground, pushed her head into the ground, and spat in her face.  The neighbors reported that the Child was in the same room as the parents and was heard crying and yelling, " 'stop hurting her, stop.' "  The Child did not sustain any physical injuries, but Mother sustained an abrasion to her head, scratches on her forearm and a bruise to her arm.

When police arrived, Mother was uncooperative.  She was initially resistant to allowing law enforcement into the home or allowing them to speak with the Child.  She also refused to discuss the criminal protective order against the Father.  Father was arrested and Mother planned to remain in the home with the Child.

As a result of the dangerous and continuing pattern of domestic violence between the parents and its impact on the Child, the Agency filed a petition pursuant to section 300, subdivision (b)(1) and obtained a protective custody warrant.

After his initial detention at the Polinksy Children's Center, the Child was placed with a foster caregiver, and on May 4, 2023, he was placed with his paternal grandmother.  Mother and Father engaged in separate supervised visits with the Child in accordance with the court's March 22, 2023 order.

---

7    Father reported that he had been staying at Mother's home one to two nights per week for six months.

Pending the disposition hearing, Mother and Father began attending and participating in domestic violence classes and other services. They were both still early in their domestic violence treatment, and neither parent had completed a domestic violence relapse prevention plan. The Agency recommended that the Child be removed from the custody of parents while they continued to access services to address the safety concerns.

At the conclusion of the contested disposition hearing on June 1, 2023, the juvenile court ordered the Child removed from the physical custody of both parents and ordered that the Child remain in the care of paternal grandmother. It found that both parents had made minimal progress in alleviating or mitigating the causes necessitating placement. The court ordered the continuation of reunification services with liberal, but separate, supervised visitation for both parents. A six-month review hearing was scheduled for November 28, 2023, and a 12-month review hearing was scheduled for May 15, 2024.

Both parents timely appealed the court's disposition order.[8]

DISCUSSION

A. *Standard of Review*

Section 361, subdivision (c)(1) provides a child may not be taken from the custody of his or her parents unless the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means

---

[8] Father joined in and adopted the statement of the case, facts, and arguments raised in mother's opening brief pursuant to California Rules of Court, rule 8.200(a)(5).

by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

When reviewing the disposition order made by the juvenile court pursuant to the clear and convincing standard, the appellate court must determine if it is supported by substantial evidence while " 'bearing in mind the heightened burden of proof' " in the court below. (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146 (*Hailey T.*).) The question before us is not whether we regard the evidence supporting the court's order is clear and convincing; "it is whether a reasonable trier of fact could have regarded the evidence as satisfying this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1009 (*Conservatorship of O.B.*).)

We view the record in the light most favorable to the juvenile court's order and indulge in reasonable inferences that the juvenile court might have drawn from the evidence. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1008-1009.) We must accept the juvenile court's resolution of conflicting evidence, and we may not insert our own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment. (*Ibid.*)

B. *Substantial Evidence Supports the Juvenile Court's Finding of Substantial Danger to the Child*

The evidence presented at the contested dispositional hearing, including the March 22, 2023 detention report, the April 13, 2023 jurisdiction/disposition report, and two addendum reports dated June 1, 2023 constitutes substantial evidence supporting the removal order. The reports contain detailed information revealing a continuing and escalating pattern of domestic violence between the parents that posed a substantial danger to the Child's physical and emotional safety and well-being, as well as the parents'

7

unwillingness to change their destructive behaviors and repeated violations of a criminal protective order.

The parents failed to carry their burden on appeal to show "there is no evidence of a sufficiently substantial nature to support the court's findings or orders." (*Hailey T.*, *supra*, 212 Cal.App.4th at p. 147.) "[T]he court may consider the parents' past conduct as well as present circumstances" (*In re Cole* (2009) 174 Cal.App.4th 900, 917), and in this case, the parents' continuing pattern of domestic violence placed the child in both physical and emotional danger. Although the parents' violence was not intentionally directed at the child, and there is no evidence that mother harmed the child when father was not present, the pattern of domestic violence incidents involving the child nevertheless demonstrate substantial danger to both his physical and emotional well-being. (*Ibid.* ["The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate"].) The domestic violence incident in 2020 resulted in direct physical harm to the Child, and although he was not physically injured in the subsequent incidents, the parents' behavior continued to endanger his physical and emotional well-being. For example, during the most recent incident in March of 2023, the Child witnessed his Father slam his Mother to the ground and spit in her face while he cried and screamed for him to "stop hurting her." The increasing seriousness of the domestic violence, and Mother's demonstrated reluctance to keep Father away from her and the Child, also supported an inference that the Child was at increasing risk of physical and emotional harm.

As the juvenile court noted, Mother was engaged in services at the time of the dispositional hearing and claimed she was "serious this time," but she was still early in the process. As for Father, the evidence demonstrates that

he had previously refused to participate in the services offered. After the Child was removed from Mother's care, he began attending a 52-week domestic violence education program but had only completed six weeks and was "too early in the process" for the program to provide additional information regarding his progress.

Mother acknowledged the mistakes she made in the past, but she failed to establish that she had gained the necessary insight to protect the Child from the parents' pattern of domestic violence. The focus of the removal statute is to avert harm to the child (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 536), and there is substantial evidence to support the juvenile court's finding that Mother still lacked understanding of the importance of preventing domestic violence situations and her responsibility to avoid placing herself and the Child in those situations.[9]

We conclude that substantial evidence supports the juvenile court's finding by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home." (§ 361, subd. (c)(1).) Mother's argument that removal was not appropriate in the absence of a risk of physical harm fails. Mother relies on *In re Isayah C.* (2004) 118 Cal.App.4th 684 (*Isayah C.*) but the same court in *In re H.E.* (2008) 169 Cal.App.4th 710 (*H.E.*) limited the holding in *Isayah C.* to its facts and the "unremarkable deduction that, where the subdivision requires risk of

---

[9]  Father now supports placement of the Child with the Mother on appeal, but he objected to such placement at the hearing below where he argued that Mother's testimony demonstrated a "severe" lack of insight and her refusal to take any responsibility for her role in the domestic violence.

9

emotional *or* physical harm and there is no risk of emotional harm, there must be risk of physical harm. [Citation.]" (*Id.* at p. 721.)

*H.E.* explained that *Isayah C.* failed to consider that "case law has long construed section 361 as allowing removal where 'return of the child would create a substantial risk of detriment to the child's physical *or* emotional well-being" and that California Rules of Court, rule 5.695(d)(1) confirms that construction. (*H.E.*, *supra*, 169 Cal.App.4th at p. 720.) And as the California Supreme Court unequivocally stated in *In re Marilyn H.* (1993) 5 Cal.4th 295 (*Marilyn H.*): "The standard for removal from parental custody was changed from the best interest of the child to clear and convincing evidence of substantial danger to the physical *or* emotional health of the child. (§ 361.)" (*Marilyn H.*, at p. 302; italics added.) We conclude that substantial evidence supports the juvenile court's finding of substantial danger to the Child.

C. *Substantial Evidence Supports the Juvenile Court's Finding of No Alternative Means to Protect the Child*

Mother's contention that the juvenile court failed to consider alternatives to removal is belied by the record. The juvenile court expressly stated that reasonable efforts had been made to prevent or eliminate the need for the removal and to make it possible for the Child to return home, but there were no reasonable means to protect the Child without removing him.

Mother suggests that continued oversight by the Agency and the court and the parents' active participation in services, coupled with her reliance on supportive friends and family while she seeks confidential housing, would be sufficient to ensure the Child's safety if he was returned to her custody. But Mother's proposed alternative to removal ignores the history of this case. The parents' pattern of domestic violence continued for years despite having supportive family and friends. Numerous alternatives were extended to the

parents by the Agency and the court before the Child's removal, including but not limited to safety plans, restraining orders, a criminal protective order, a voluntary services case, and resources to address the domestic violence issue. Yet the parents failed to fully participate in the services offered, repeatedly violated restraining orders and the criminal protective order, and continued to engage in direct contact that led all too frequently to arguments that escalated into domestic violence placing their Child at risk.

The juvenile court has "broad discretion to determine what would best serve and protect the child's best interests" (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863), and its conclusion that no reasonable means were available to protect the child without removing him from the parents' custody is supported by substantial evidence on this record. (See *In re John M.* (2012) 212 Cal.App.4th 1117, 1127; see also *In re Vonda M.* (1987) 190 Cal.App.3d 753, 757 ["The more likely it is that the offending parent will have further contact with the nonoffending parent, the more the child's welfare is jeopardized by being placed unsupervised with the nonoffending parent."].)

We emphasize that this is not the end of the road for either parent. The purpose of providing reunification services is to eliminate the conditions leading to the loss of custody and facilitate reunification of parent and child. (*In re I.A.* (2019) 40 Cal.App.5th 19, 23.) We do not prejudge whether either parent will be able to accomplish that goal. We merely hold that substantial evidence supports the juvenile court's disposition order at this early stage of the dependency proceeding.

11

## DISPOSITION

The June 1, 2023, disposition order is affirmed.

BUCHANAN, J.

WE CONCUR:

DO, Acting P. J.

KELETY, J.

12